HI–COUNTRY ESTATES HOME-OWNERS ASSOCIATION, a Utah corporation, Plaintiff, Appellant, and Cross–Appellee,

v.

BAGLEY & COMPANY, a Utah corporation; J. Rodney Dansie; Gerald Bagley; Hi–Country Estates, Inc., a dissolved Utah corporation; Keith Spencer; Charles E. Lewton; and unknown persons claiming an interest in Hi–Country Estates Subdivision, Defendants, Appellees, and Cross–Appellants.

FOOTHILLS WATER COMPANY, a Utah corporation, Counterclaimant, Appellee, and Cross–Appellant,

v.

HI–COUNTRY ESTATES HOME-OWNERS ASSOCIATION, a Utah corporation; W. Norman Sims; and William P. Turner, Counterclaim Defendants, and Appellees.

No. 920450–CA.

Court of Appeals of Utah.

Sept. 22, 1993.

Rehearing Denied Dec. 7, 1993.

**2**

Larry R. Keller, Salt Lake City, for appellants.

Ralph J. Marsh, Val R. Antczak, and T. Patrick Casey, for appellees.

Before GREENWOOD and ORME, JJ., and GARFF,[1] Senior Judge.

## OPINION

REGINAL W. GARFF, Senior Judge:

Appellant Hi–Country Estates Homeowners Association (Homeowners Association) appeals from a final order, which ultimately granted quiet title to a water system, water right, and property lot in favor of appellee Foothills Water Company. We affirm in part, reverse in part, and remand in part.

## FACTS

We draw the facts from the parties' stipulated statement of facts, which the court adopted in its findings of fact.

In 1970, appellee, Gerald H. Bagley purchased the undeveloped real property involved in this action from Tony and Bette Lou Nicoletti pursuant to a deferred-payment contract. Also in 1970, Bagley, Charles E. Lewton, and others formed Hi–Country Estates, Inc., a Utah corporation. This corporation, which was involuntarily dissolved in 1976, was the general partner for Hi–Country Estates, Second. Bagley later assigned his contract with the Nicolettis to Hi–Country Estates, Second, a limited partnership, in which he was one of the partners. Later in 1970, the Hi–Country Estates, Second partnership, along with Zions First National Bank Trust Department and the Nicolettis, entered into an

---

1. Senior Judge Regnal W. Garff, sitting by special appointment pursuant to Utah Code Ann. § 78-3-24(10) (1992).

agreement under which the bank would take title to the property, remit payment on the contract to the Nicolettis, and thereafter deed the property to purchasers of lots within the subdivision. The partnership subdivided the property into the Hi–Country Estates Subdivision. The partnership installed a water system to supply water to the subdivision, and then commenced to sell lots to the public.

In 1971, Bagley and the other partners sold their interests in the project to Lewton and withdrew from the project. Keith Spencer later joined Lewton as an owner and manager of the project.

In 1973 and 1974, Lewton and Spencer sold the water system, along with all unsold lots in the subdivision, back to Bagley, who then resumed operation of the water system. Bagley made substantial repairs and capital improvements to the system, including constructing a second storage tank, adding pumps and lines, replacing booster lines, and in 1977, connecting the system to an additional well leased from Jesse J. Dansie (the Glazier Well Water Right).

From 1973 to October 1985, Bagley operated and maintained the water system in the capacity of (1) an individual, or (2) a general partner of Bagley and Company, or (3) a limited partner of Foothills Water Company. During those years, he incurred total cash losses of $487,510.00 in operating, maintaining, and improving the water system. In 1976, Hi–Country Estates, Inc. was involuntarily dissolved.

In 1977, Bagley entered into a well lease agreement with Jesse J. Dansie to supply water from the Dansie well to the water system. This lease provided that Dansie and his family would continue to receive water from the well, as long as the system was operable. The lease provided that it could be renewed on April 10, 1987 "on terms to be agreed to by Bagley and Dansie."

In 1982, Homeowners Association received tax notices from Salt Lake County requesting payment of delinquent and current taxes on the water system. Home- owners Association forwarded these notices to Bagley with a letter stating it did not own the water system and thus Bagley was responsible for the taxes. In 1984, Bagley paid $15,000.00 in delinquent taxes to redeem the system, after the county had scheduled a tax sale. Even though Bagley paid the taxes, the county issued the tax deed to the two water tank lots in the name of Homeowners Association.

In March 1985, Homeowners Association brought an action to quiet title in the water system, the Glazier Well Water Right, and the two water tank lots. Bagley counterclaimed, praying for reimbursement of all sums expended in the construction and installation of the water system and all costs and expenses incurred in the operation and maintenance of the water system "in the event [Homeowners Association] is found to be the owners of the water system." Bagley adopted one of the association's alternative theories: that he acted as a constructive trustee or resulting trustee of the disputed property.

In the same action, Foothills Water Company sought damages for slander of title from Spencer, Lewton, Homeowners Association, and from W. Norman Sims and William P. Turner, members of the association. It also sought damages similar to those sought by Bagley. The trial court dismissed Foothills Water Company's claim for slander of title on October 20, 1989, for "lack of proof."

In June of 1985, Turner asked J.R. Moss, a trust officer of Zions Bank to prepare a quit-claim deed to the two water tank parcels on the property with Homeowners Association as a grantee. He also asked Moss to request quit-claim deeds from Spencer and Lewton, former officers of the defunct Hi–Country Estates, Inc. and of Hi–Country Estates, Second. Moss prepared the deeds for the tank lots for Zions's signature and had them recorded. Moss prepared other quit-claim deeds and forwarded them to Spencer and Lewton, who signed them on behalf of Hi–Country Estates, Inc. and Hi–Country Estates, Second, and returned them to Moss, who had them recorded.

On October 31, 1985, Bagley transferred ownership of the water system to Dansie in lieu of payment of sums due him on a previous obligation. This transfer was made via Bagley executing an assignment transferring all the outstanding stock of Foothills Water Company to Dansie.

In January 1986, in a Public Service Commission (PSC) hearing regarding rate base, Homeowners Association argued that Foothills Water Company should not include the cost of the water system as a capital investment in its rate base. The PSC determined that only a small portion of the water company's capital investment could be included in the utility's rate base, pending resolution of the ownership dispute in district court. At the same time, Homeowners Association agreed to pay the property taxes on the water system directly, in part to avoid those taxes being included as an expense in setting water rates.[2]

On March 17, 1986, the PSC issued a final report and order, determining the extent to which the improvements in the water system could be included in the rate base. Those findings included: (1) "Bagley was selling lots at a profit until 1976;" (2) "the improvements made between 1977 and 1980 were to have been provided by Bagley as part of the original system;" and (3) only $15,334.99 of the improvements were includable in the rate base as legitimate costs of improvement to the system.

Trial in the district court on the issue of ownership began August 25, 1988. The court conferred with counsel off the record, asking them to stipulate to some of the facts and proffer evidence pertaining to the disputed issues.

The parties then agreed to brief the issues and submit them for decision. The court set the due date for briefs for noon on September 9, 1988, and it set oral argument on the matter for 1:00 p.m. the same day. This hearing was continued several times. It was finally held October 25, 1988.

At the August 25, 1988 hearing, Foothills Water Company's counsel mentioned a "potential need for witnesses." The court responded that counsel should notify the court "by a telephonic conference if it appears that there are proffered facts that cannot be stipulated to." The court noted it would render an "opinion on the record, not in the form of a memorandum decision." It then released all witnesses. The court noted that counsel should contact the court via telephonic conference in the event "problems arise in any way."

On October 14, 1988, Homeowners Association, Foothills Water Company, and Bagley filed a stipulated statement of undisputed facts and disputed contentions. To support its position regarding the disputed issues, Foothills Water Company prepared and submitted an extensive set of proffers of witness testimony. The other parties did not file any proffers.

After several postponements, hearing on the issue of ownership was held October 25, 1988. The court determined that Homeowners Association "is the legal owner of the disputed water system." The court made findings supporting this conclusion based on the parties' stipulated statement of facts and the exhibits attached thereto. The court's findings did not adopt any of the facts or theories set forth in Foothills Water Company's proffers. The court concluded that it would quiet title in favor of the association "only upon payment in full by [Homeowners Association] to [Foothills Water Company] of the Court's reimbursement order for improvements by [Foothills Water Company] to [Homeowners Association's] water system for the years 1974 to 1985."

In determining that Homeowners Association owned the water system, rights, and lot, the court relied on the following documents:

Two 1975 quitclaim deeds from Hi–Country Estates, Inc., and Hi–Country Estate Second, to [Homeowners Association], those deeds conveying all common

---

2. The Utah Supreme Court has previously affirmed that local taxes may be passed on to consumers by way of the rate base. *See Moun-* *tain States Tel. and Tel. Co. v. Salt Lake City,* 596 P.2d 649, 651 (Utah 1979).

areas in the subdivision to [Homeowners Association].

A 1984 recorded tax deed from Salt Lake County to [Homeowners Association] conveying all the water tank lots in the disputed subdivision to [Homeowners Association].

A 1985 recorded deed from Hi–Country Estates, Inc., to [Homeowners Association], conveying the water tank lots to [Homeowners Association].

A 1985 recorded deed from Hi–Country Estates Second to [Homeowners Association], conveying the water tank lots to [Homeowners Association].

Two 1985 recorded quitclaim deeds from Zions Bank and Trust, trustee for the property in the subdivision, to [Homeowners Association], conveying the water tank lots to [Homeowners Association].

An assignment from Hi–Country Estates, Inc., to [Homeowners Association], of the disputed water rights.

An acknowledgment by the State Engineer's Division of Water Rights that [Homeowners Association] is owner of the water rights, more specifically, water right referred to in this action as the Glazier Well Water Right.

After ruling from the bench, the court suggested that the parties attempt to stipulate to the amount due Foothills Water Company. "If you are unable to do that, the court will schedule an evidentiary hearing, take testimony, and make the decision on the matter."

When asked about unaddressed issues such as the counterclaims, attorney fees, and other issues, the court responded that it would take such issues under advisement, hoping that in the mean time, the parties would attempt to resolve those issues "with the umbrella issue of reasonable reimbursement." The court then set a time for an evidentiary hearing for the issue of reimbursement.

The court's ruling from the October 25, 1988 hearing was set forth in findings of fact and conclusions of law, signed October 20, 1989 by the court and approved by counsel for the parties. Regarding the October 25, 1988 hearing on the issue of ownership, the court noted that "any objections to the content of the Court's ruling on the resulting findings, conclusions and order shall be addressed in a motion for reconsideration of such ruling, findings, conclusions and order and not as objections to form."

Accordingly, on October 30, 1989, Foothills Water Company moved the court to reconsider, or to set aside the order on the basis that the proceedings did not afford it due process, did not present it with an opportunity to properly present its position according to the rules of civil procedure and of evidence, and did not comport with the method agreed upon. Foothills Water Company also claimed that the findings and order were not supported by sufficient evidence.

Further, on December 1, 1989, Homeowners Association moved that the court recognize and be bound by the PSC's determination regarding the value of the improvements to the water system made between 1974 and 1985.

The court heard Foothills Water Company's motions on December 28, 1989, and issued an order denying them and restating that its October 20, 1989 order would be the final order of the court regarding ownership. The court held that Foothills Water Company had waived its right to an evidentiary hearing on the issue of ownership because it never contacted the court to arrange such a hearing as contemplated in the court's directive from the bench during the August 25, 1988 hearing.

On January 8, 1990, Foothills Water Company and Dansie again moved for reconsideration or for amendment of the court's previous findings, conclusions, and order. On January 17, 1990, the court again reiterated its prior order of October 20, 1989.

On January 31, 1990, the court scheduled a trial to "determine fair compensation." After several delays, an evidentiary hearing was held July 30, 31, and August 1, 1990, to determine the amount of reimbursement due Foothills Water Company.

Evidence was submitted showing that Bagley, since taking the water system back in 1974, had spent $227,851.00 on capital improvements to the water system and had incurred $250,659.00 in operating losses while operating the system for the benefit of Homeowners Association. The evidence regarding the present value of the system was disputed.

On August 16, 1990, the court issued its memorandum decision, later embodied in formal findings of fact, conclusions of law, and order "regarding amount payable by [Homeowners Association] for subject water system," dated October 31, 1990. The court ruled that the Dansie well lease agreement was a valid and binding encumbrance on the water system. The court also held that Bagley was not entitled to any compensation for operating losses and capital improvements relating to the water system, primarily because he had assigned all his rights to Foothills Water Company.

The court found that the "water system ... and the water right at issue ..., including improvements made, property taxes paid, repairs to the system and operating losses, have a combined net value of $98,500." The court ordered Homeowners Association to pay Foothills Water Company $98,500.00 for the value of the water system before it would enter the quiet title order. The court ordered the association to pay the sum by no later than August 15, 1991, with the unpaid balance being interest free.

On October 31, 1990, the parties met with the judge for an informal conference regarding a motion to certify the court's orders as final. At that time, and not on the record, despite the parties' request for the matter to be on the record,[3] the judge granted the oral motion of Foothills Water Company and Bagley to amend its previous order dated October 31, 1990. The court ruled that in the event Homeowners Association failed to pay the sum of $98,500.00 by August 15, 1991, the court would then enter an order quieting title to the water

system in favor of Foothills Water Company. The court formally entered this amended order February 5, 1991.

On May 23, 1991, Homeowners Association filed a "Motion to Pay $98,500.00 into an Interest–Bearing Account Under Control of the Court," which motion was granted. The court denied the association's other motion to enter an order requiring that the $98,500.00 be returned to it in the event the appellate court reversed the trial court's quiet title order in its favor. Because it did not want to risk the money, Homeowners Association refused to pay the $98,500.00.

On August 20, 1991, after being notified by Foothills Water Company that the $98,500.00 had not been paid to it as provided, the court entered a quiet title order in favor of Foothills Water Company.

Homeowners Association appeals, seeking reversal of the quiet title order in favor of Foothills Water Company, and reversal of the determination that it was required to pay $98,500.00 as a condition precedent to receiving quiet title. It also seeks an order requiring the trial court to quiet title in its favor without the encumbrance (the well lease) referred to in its final order.

Bagley also appeals, claiming the trial court should have apportioned part of the reimbursement damages to him because he expended money for capital improvements to the water system, along with costs of operation and maintenance. He also claims entitlement to a security interest in the water system.

The initial issues are: (1) whether the trial court abused its discretion in disallowing an evidentiary hearing on the issue of ownership; (2) whether the court erred in initially quieting title in favor of Homeowners Association; including (3) whether the court was empowered to make its order contingent on the association paying $98,500.00 to Foothills Water Company; (4) whether the court correctly determined that Bagley was not entitled to damages;

---

**3.** District courts are courts of record. Utah Const. art. VIII, § 1. We are perplexed at the court's refusal to make a record of this motion and decision. *See Briggs v. Holcomb,* 740 P.2d 281, 282–83 (Utah App.1987).

and (5) whether the court correctly determined that Foothills Water Company had not presented a prima facie case to establish slander of title.

The remaining issues involve the jurisdiction of the PSC vis a vis the jurisdiction of the district court. We review those issues after we dispose of the initial issues.

## PROCEDURE

■ The posture of this case, at least regarding the issue of ownership, is similar to that of a summary judgment because the court had no evidence before it other than the parties' stipulated statement of facts. While the court also had before it Foothills Water Company's proffers, the court never considered them because Foothills Water Company failed to timely request a hearing on the disputed issues. The court had ordered, pursuant to the parties' agreement, that the parties attempt to submit the matter via stipulation and proffer. The parties agreed to submit a statement of stipulated facts and contentions, to proffer disputed issues, and to request an evidentiary hearing, if any of them felt one was warranted. They agreed to submit their stipulation and to argue their positions on a date certain, which date was postponed several times. The parties finally argued the matter on October 25, 1988.

While the court never set a deadline for requesting an evidentiary hearing on the issue of ownership, logic dictates that the deadline could be no later than argument and submission of the issue. In other words, the fact that none of the parties requested an evidentiary hearing prior to October 25, 1988, the date of oral argument, suggests that, as of that date, they saw no need for such a hearing and thus waived it.

Thus, when Foothills Water Company moved the court to reconsider its refusal to grant an evidentiary hearing, the court did not err in denying the motion because the parties, by their inaction, had waived their right to a hearing.

## QUIET TITLE TO HOMEOWNERS ASSOCIATION

■ Foothills Water Company claims the trial court erred in its October 25, 1989 order granting quiet title in favor of Homeowners Association. It also claims the court erred in issuing a ruling entirely independent of its proffers.

The parties stipulated that, prior to 1985, title to the water right and to the water tank lots "could still be considered to be in the name of Zions Bank or Hi–Country Estates, Inc." Given this stipulation, and given that quit-claim deeds were executed in favor of Homeowners Association by the principals of Hi–Country Estates, Inc. on behalf of those entities, and by trust officers of the bank, the court did not err in concluding that Homeowners Association held legal title to the water right, lots, and system.

## CONTINGENT QUIET TITLE ORDER

Homeowners Association claims the trial court erred in conditioning its quiet title upon its paying $98,500.00 to Foothills Water Company. It also claims the court erred in issuing a quiet title in favor of Foothills Water Company upon the association's failure to pay the amount set.

■ Utah's quiet title statute requires a court to allow as a setoff or counterclaim the value of the improvements provided by one, who in good faith, is "holding under color of title adversely to the claims of the [owner]." Utah Code Ann. § 78–40–5 (1992). It does not provide for a contingent quiet title. Moreover, a contingent quiet title is antithetical to the nature of the action because a court issues a quiet title by virtue of the claimant's strength of title rather than by reason of the weakness of the opponent's title. *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048–49 (Utah 1983).

Here, the court first quieted title in Homeowners Association and then took title away from it by making the association's quiet title contingent on its paying a set amount to Foothills Water Company. We find no legal justification or authority

for the court setting such a contingency on Homeowners Association's quiet title. Further, the court did not allow Foothills Water Company a mere setoff or counterclaim for the value of its good faith improvements. Thus, the court erred in quieting title in Foothills Water Company's favor as a default position for the association's refusal to pay the amount set.

We therefore reverse the contingent quiet title order and remand for the court to issue a quiet title order in favor of Homeowners Association. We next address whether the quiet title may be subject to a setoff or counterclaim as a result of Bagley's claim. Later in this opinion, we address the general issue of Foothills Water Company's award as we discuss the role of the Public Service Commission.

## BAGLEY'S DAMAGES

■ Bagley cross appeals, claiming the trial court erred in ordering reimbursement to Foothills Water Company, but not to him. Bagley claims no evidence supported excluding him from the reimbursement award.

The parties stipulated that on October 31, 1985, Bagley, pursuant to an assignment, transferred to Dansie all of his stock in Foothills Water Company. The stipulation, which incorporated Bagley's assignment, noted that Bagley transferred "all right, title and interest in any and all water rights, equipment, easements, rights of way or property they have or may have in or to or associated with the water system ‘...’"

"An assignment merely sets over or transfers the interest of one party in certain property to another." *Tanner v. Lawler*, 6 Utah 2d 84, 305 P.2d 882, 885 (1957). *Accord Wiscombe v. Lockhart Co.*, 608 P.2d 236, 238 (Utah 1980) ("an assignee takes nothing more by his assignment than his assignor had").

Given the parties' stipulation regarding the terms of the assignment, we affirm the trial court's conclusion that "all [of Bagley's] claims, rights, title and interest in said water system and water right merged with those of defendant J. Rodney Dansie and defendant Foothills Water Company." Thus, because Bagley had no rights in the system after October 31, 1985, he is not entitled to compensation for amounts paid by him prior to his transfer.

## SLANDER OF TITLE

■ Foothills Water Company, in its cross-appeal, claims the trial court erred in dismissing its claims for slander of title because it had proffered to the court that Homeowners Association's agents, Turner and Sims, sought and obtained deeds to the "water tank lots" and an assignment of the water right, and attempted to use the documents to illegally obtain control and ownership of the system.

An action for slander of title "consists of the willful recordation or publication of untrue material that is disparaging to another's title." *Jack B. Parson Cos. v. Nield*, 751 P.2d 1131, 1134 (Utah 1988). *Accord First Sec. Bank v. Banberry Crossing*, 780 P.2d 1253, 1257 (Utah 1989); *Bass v. Planned Management Servs., Inc.*, 761 P.2d 566, 568 (Utah 1988).

Here, the trial court, on October 20, 1989, concluded that the "counterclaim by Foothills Water Company is hereby dismissed for lack of proof." Given that the court had granted Homeowners Association title, it implicitly ruled that the association acted under color of title, and therefore acted without malice. That is, by determining that Homeowners Association had title, which determination we affirm, the court could not have also ruled that the association had committed an act that was "disparaging to *another*'s title." *Jack B. Parson*, 751 P.2d at 1134 (emphasis added). Thus the trial court correctly dismissed the claim.

## REMAINING ISSUES

The remaining issues involve the jurisdiction of the Public Service Commission vis a vis the jurisdiction of the district court. These issues include (1) whether the court erred in refusing to grant summary judgment on the issue of Foothills Water Com-

pany's compensation; (2) whether the court erred in determining the well lease was valid and binding on the owner of the water system; and (3) whether the court erred in requiring Homeowners Association to allow Foothills Water Company to transport water through its system to customers outside the subdivision.

Homeowners Association claims the court erred in refusing to summarily rule on these issues. In the alternative, the association argues that this court should remand these issues to the PSC for determination.

## PUBLIC SERVICE COMMISSION JURISDICTION

The parties dispute whether the PSC and not the district court should properly determine the value of the system payable by Homeowners Association and the value of improvements made between 1974 and 1985. Because the issue of the jurisdiction of the PSC vis a vis the jurisdiction of the district court is crucial to several issues in this case, we discuss it at length.

In an order dated March 17, 1986, the PSC determined that Foothills Water Company had been operating an uncertified public utility.[4]

The PSC is empowered to "ascertain the value of the property of every public utility in this state and every fact which in its judgment may or does have any bearing on such value." Utah Code Ann. § 54-4-21 (1990). Moreover, the PSC's valuation of a public utility "shall be considered the actual value of the properties of said public utilities in Utah unless otherwise changed after hearings by order of the commission." *Id.* Likewise, the PSC may hold hearings to determine the value of public utility properties and improvements. Utah Code Ann. § 54-7-19(1)(a) and (2)(a).

The essential objectives of the PSC's supervision are twofold: (1) to assure a public utility's "continued ability to be able to serve the customers who rely upon [it] for essential services and products"; and (2) to balance "the interest of having financially sound utilities that provide essential goods and services against the public interest of having goods and services made available without discrimination and on the basis of reasonable costs." *Garkane Power Ass'n v. Public Serv. Comm'n,* 681 P.2d 1196, 1207 (Utah 1984) (per curiam).

The PSC is empowered to set utility rates following hearings. Utah Code Ann. §§ 54-4-4(1) and 54-7-12(1) and (2); *Department of Bus. Reg. v. Public Serv. Comm'n,* 720 P.2d 420, 420 (Utah 1986). "In determining an appropriate rate, the PSC considers the utility's historical income and cost data, as well as predictions of future costs and revenues, and arrives at a rate which is projected as being adequate to cover costs and give the utility's shareholders a fair return on equity." *Id.*

Utah courts have long held that the PSC may regulate public utility rates, even when doing so requires altering contractual relationships. *Utah Hotel Co. v. Public Utilities Comm'n,* 59 Utah 389, 204 P. 511, 516 (1922); *Utah Copper Co. v. Public Utilities Comm'n,* 59 Utah 191, 203 P. 627, 631 (1921). The public interest in access to utilities, and in fair and just rates, justifies such regulation and justifies the altering of contractual relationships. *Arkansas Natural Gas Co. v. Arkansas R.R. Comm'n,* 261 U.S. 379, 383, 43 S.Ct. 387, 388, 67 L.Ed. 705 (1923). "It is the intervention of

---

**4.** Utah Code Ann. § 54-2-1 (Supp.1993) provides that public utilities include water systems and water corporations. The term "water corporation" includes

every corporation and person, their lessees, trustees, and receivers, owning, controlling, operating, or managing any water system for public service within this state.

Utah Code Ann. § 54-2-1(34). The term "water system" includes

all reservoirs, tunnels, shafts, dams, dikes headgates, pipes, flumes, canals, structures, and appliances, and all other real estate, fixtures, and personal property owned, controlled, operated, or managed in connection with or to facilitate the diversion, development, storage, supply, distribution, sale, furnishing, carriage, appointment, apportionment, or measurement of water for power, fire protection, irrigation, reclamation, or manufacturing, or for municipal, domestic, or other beneficial use.

Utah Code Ann. § 54-2-1(35).

the public interest which justifies and, at the same time conditions [the PSC's] exercise." *Id.*[5]

Thus, to determine whether the district court or the PSC should properly determine the value of capital improvements during the relevant period, we analyze whether such a determination invokes the public interest and serves the objectives of the PSC. *See id.*

### SUMMARY JUDGMENT

Homeowners Association claims the trial court erred by not granting summary judgment on the issue of the amount owed to Foothills Water Company. The association claims summary judgment was appropriate because (1) the PSC is uniquely qualified and has jurisdiction to value the system in this instance where the dispute involves the ratepayers; (2) the PSC has already determined that the association paid for the value of the utility at the time the individual members purchased their lots; and (3) the PSC has already determined the degree to which the value of improvements made between 1974 and 1985 could be included in the rate base.

Here, the trial court, using a theory of unjust enrichment, found that Homeowners Association should reimburse Foothills Water Company $98,500.00 for the value of the "entire water system, the improvements made thereon from 1974 to 1985 and the water right." In other words, the trial court not only evaluated improvements, but it evaluated the entire system and imposed payment for the whole system.

■ Here, the valuation of the system and its capital improvements invokes the public interest of the ratepayers (in this case, the individual ratepayers who comprise the association) and their access to utilities and fair and just rates. *See Arkansas Natural Gas Co. v. Arkansas R.R. Comm'n*, 261 U.S. 379, 383, 43 S.Ct. 387, 388, 67 L.Ed. 705 (1923). Moreover, this case is not confined merely to "the ordinary conduct of a business ... that could be litigated only in a district court and not before the PSC." *Garkane Power Ass'n v. Public Serv. Comm'n*, 681 P.2d 1196, 1207 (Utah 1984) (per curiam). In short, the public interest of the ratepayers and their fair access to utilities justifies the exercise of the PSC's jurisdiction. *See Arkansas Natural Gas*, 261 U.S. at 383, 43 S.Ct. at 388.

The PSC determined that "the improvements made between 1977 and 1980 were to have been provided by Bagley as part of the original system." *In Re Foothills Water*, Case No. 85–2010–01 (Utah PSC 1986). The PSC concluded that only $16,334.99 was allowable as legitimate costs of improvements to the system that were not recovered in the sale of lots originally.

"In all collateral actions or proceedings the orders and decisions of the commission which have become final shall be conclusive." Utah Code Ann. § 54–7–14 (1990); *accord North Salt Lake v. St. Joseph Water & Irrigation Co.*, 118 Utah 600, 223 P.2d 577, 585 (Utah 1950).

■ We therefore hold that the PSC determination regarding the amount Foothills Water Company could recover for its improvements is binding. Accordingly, we agree with the PSC that the $16,334.99 is includable in the rate base.

### WELL LEASE ENCUMBRANCE

Homeowners Association claims the trial court erred in determining that the well lease entered into between Bagley and Dansie was a valid and binding encumbrance. The association claims the court had no jurisdiction to determine the validity of an encumbrance on a public utility. In a similar vein, Homeowners Association claims the court erred in failing to hold that the PSC's determination precludes Foothills Water Company from asserting the validity of the well lease agreement.

---

5. We acknowledge that "not every contract entered into by a public utility is subject to the jurisdiction of the PSC." *Garkane Power*, 681 P.2d at 1207. For example, "contracts dealing with the ordinary conduct of a business, are contracts that could be litigated only in a district court and not before the PSC." *Id.*

In the alternative, the association claims the lease did not constitute an encumbrance because it had lapsed.

The PSC is empowered to "ascertain the value of the property of every public utility in this state and every fact which in its judgment may or does have any bearing on such value." Utah Code Ann. § 54–4–21 (1990). Moreover the PSC's valuation of a public utility "shall be considered the actual value of the properties of said public utilities in Utah unless otherwise changed after hearings by order of the commission." *Id.*

"Any transfer of a utility asset should be for fair market value so an appropriate benefit therefrom will redound to the credit of the ratepayers." *Committee of Consumer Servs. v. Public Serv. Comm'n*, 595 P.2d 871, 878 (Utah 1979), *cert. denied, sub nom. Mountain Fuel Supply Co. v. Committee of Consumer Servs.*, 444 U.S. 1014, 100 S.Ct. 664–65, 62 L.Ed.2d 644 (1980). The PSC must approve any such transfer based upon a determination as to "whether the transaction is detrimental to the ratepayer, and whether it is in the public interest." *Id.*

■ The issue of whether the well lease is a valid encumbrance on the property is one which has "bearing on such value [of a public utility]." Utah Code Ann. § 54–4–21. The issue is also one of fact regarding whether the Dansie family has been granted "any preference or advantage" and whether Homeowners Association has been subjected to "any prejudice or disadvantage." Utah Code Ann. § 54–3–8. In short, this issue is within the PSC's exclusive jurisdiction. Moreover, it is one the PSC has already determined.

■ The PSC determined, in an order dated March 17, 1986, that the well lease agreement was "grossly unreasonable" and that it had the effect of "showering virtually limitless benefits on Jesse Dansie and the members of his immediate family."

The PSC found the agreement "makes Bagley personally responsible to fulfill the terms and conditions of the lease, whether or not a water company is created to which Bagley conveys or assigns the Well Lease Agreement." The PSC found it "unjust and unreasonable to expect Foothills' 63 active customers to support the entire burden of the Well Lease Agreement." Based on these findings, the PSC ordered Foothills Water Company to "obtain approval from this Commission before entering into any future lease or sales agreements for the provision of water to Foothills's service area or any amendment to or assignment of any lease or sales agreement that is now in force or effect." The PSC then held that its statutory duty prevented it from imposing the terms of the lease upon Homeowners Association and other present and future customers.

The PSC's 1986 order allowed Foothills Water Company to continue to supply water to the Dansie family conditioned upon payment of the cost of delivery by someone other than the customers in Foothills Water Company's service area. The order also required that Foothills Water Company bring any subsequent lease to the Commission for approval.[6]

Despite these orders of the PSC, the district court found that the 1977 well lease between Bagley and Dansie was a valid and binding encumbrance on the water system, and thus the Dansie family was entitled to draw, without charge, water from the system's Dansie well, "in the amount of either twelve million gallons per year or such larger amount as the excess capacity of the system shall permit, as long as the system exists and is operative." The court found that such encumbrance "does not in any way legally burden the water system or the owner or operator of the water system."

Given the PSC's jurisdiction to determine whether a public utility may be so encum-

---

**6.** Foothills Water Company has never sought Commission approval of the terms of the well lease. More recently, on November 30, 1992, the PSC determined that all costs of the well lease agreement, which exceed the costs of the alternative source, are unreasonable and must be carried by Foothills Water Company if it decides to continue the lease. The record shows that even though the lease provided that the parties could extend it, they did not do so.

bered, and given the PSC's March 17, 1986 order requiring Foothills Water Company to obtain PSC approval to obtain any extension of the well lease agreement, we reverse the district court's order insofar as it pertains to the validity of the well lease agreement.

## TRANSPORTATION OF WATER TO OUTSIDERS

Homeowners Association claims the trial court erred in issuing an order requiring it to allow Foothills Water Company to transport water through its system to customers outside the subdivision.

■ The district court issued an interlocutory order permitting Foothills Water Company to transfer water through the system to its customers within its service area but outside the subdivision, so long as these customers pay a fair use fee. This order was based on a single finding: "Foothills Water Company and its predecessors have used the system throughout its existence to serve customers outside the Hi–Country Estates Phase I Subdivision." Apparently the court based this "finding" on the parties' stipulation that "Foothills is, and has been since 1985, the current certificated utility serving the Subdivision (and certain other surrounding properties)."

First, this stipulated fact does not necessarily support the legal conclusion that Foothills Water Company may transport water outside the subdivision. More importantly, the issue involves the essential objectives of the PSC's supervision. Those objectives are: (1) to assure a public utility's "continued ability to be able to serve the customers who rely upon them for essential services and products;" and (2) to balance "the interest of having financially sound utilities that provide essential goods and services against the public interest of having goods and services made available without discrimination and on the basis of reasonable costs." *Garkane Power Ass'n v. Public Serv. Comm'n*, 681 P.2d 1196, 1207 (Utah 1984) (per curiam). *See also Arkansas Natural Gas Co. v. Arkansas R.R. Comm'n*, 261 U.S. 379, 383, 43 S.Ct. 387, 388 (1923); *North Salt Lake v. St.*

*Joseph Water & Irrigation Co.*, 118 Utah 600, 223 P.2d 577, 583 (Utah 1950) (the PSC is empowered to determine relative rights and obligations between utility and consumer).

Thus, the issue of whether or not a utility is entitled to provide water to a group of customers falls within the jurisdiction of the PSC.

## CONCLUSION

In conclusion we (1) affirm the district court's initial conclusion that Homeowners Association holds legal title to the water right, lots and system; (2) remand for the court to issue a quiet title order in Homeowners Association's favor with no contingencies; (3) affirm the court's conclusion that Bagley is not entitled to any damages; (4) affirm the court's conclusion that Foothills Water Company's claim for slander of title be dismissed; (5) reverse the court's order denying summary judgment on the issue of compensation, acknowledging the PSC's order that the amount of $16,334.99 is includable in the rate base; (6) reverse the district court's order regarding the validity of the well lease agreement; and (7) reverse the court's order regarding distribution of water to outsiders, acknowledging the PSC's jurisdiction over that issue.

GREENWOOD and ORME, JJ., concur.