**BASIN FLYING SERVICE, Plaintiff,**

v.

**PUBLIC SERVICE COMMISSION et al.,**
**Defendants.**

No. 13735.

Supreme Court of Utah.

Feb. 10, 1975.

2. State v. Jaramillo, 25 Utah 2d 328, 481 P.2d 394.

Hugh C. Garner and Alan A. Enke of Ray, Quinney & Nebeker, Salt Lake City, for plaintiff.

Vernon B. Romney, Atty. Gen., Salt Lake City, Gary A. Frank and Willard S. Richards of Richards & Richards, Salt Lake City, for Dinaland.

Robert W. Brandt of Brandt, Miller, Nelson & Christopherson, Salt Lake City, for Flaming George.

CROCKETT, Justice:

This review is of a determination by the Public Service Commission that it is without jurisdiction to regulate the activities of Dinaland Aviation, Inc., which offers to the public "nonscheduled" air flight services. Basin Flying Service, a Certificated Common Carrier by air, sought this review and a reversal of the Commission's determination, urging that Dinaland should also be subject to regulation by the Commission.

In 1973 the Public Service Commission issued to Dinaland an order to show cause why it should not be required to obtain a Certificate of Convenience and Necessity to operate the nonscheduled air flights it was offering to the public from its base in Vernal, Utah. On October 23, 1973, Dinaland filed an application for such a certificate to operate an on-call flight service over irregular routes to all points in the state; and in the alternative asked that the Commission find that the "service proposed by applicant is not subject to regulation by the Public Service Commission of Utah."

Due notice was given to interested parties and hearings were had at which they were allowed to participate. As a consequence of the foregoing, on April 25, 1974, the Commission issued its report and order. The part which is material, and which is under attack here, was that upon the basis of the statutes discussed below it concluded that it did not have jurisdiction to regulate "nonscheduled" air flight services such as Dinaland.

In challenging the determination by the Commission, Basin Flying Service places reliance on Section 54–4–25 of U.C.A.1953, which requires that no "aircraft carrier" shall establish or begin construction or operation of a route or system or extension thereof "without having first obtained from the Commission a certificate that present or future public convenience and necessity does or will require such construction." Basin argues that this section does not limit the certification requirement to "scheduled" air carriers and therefore applies to all air carriers, including Dinaland.[1] It is recognized that defendant's argument would have considerable plausibility if Section 54–4–25, just quoted, were the only legislative pronouncement

---

[1]. For a discussion of the significance of the term "scheduled" when used to describe air carrier service see Thompson v. Fidelity & Casualty Co. of New York, 16 Ill.App.2d 159, 148 N.E.2d 9, 161 A.L.R.2d 159, cert. denied in 358 U.S. 837, 79 S.Ct. 62, 3 L.Ed. 2d 74.

bearing on the problem. However, all of the law is not necessarily stated in one statute; and this one must be considered in connection with other statutes dealing with the subject and upon which the Commission based its decision.

The general grant of jurisdiction to the Public Service Commission is in Section 54–4–1, U.C.A.1953:

> The commission is hereby vested with power and jurisdiction to supervise and regulate every *public utility* in this state, and to supervise all of the business of every such public utility . . . .

In looking at the term "public utility" we find that "common carrier" is included within its definition in Section 54–2–1, U.C.A.1953:

> (30) The term *"public utility"* includes every common carrier, gas corporation, electrical corporation, telephone corporation, . . . [etc.] . . . where the service is performed for, or the commodity delivered to, the public generally,
> . . . .

The 1969 legislature added an amendment to the latter section which has a significant bearing on the controversy here, by adding the emphasized language:

> (14) The term "common carrier" includes every railroad corporation; street railroad corporation; automobile corporation; *scheduled aircraft carrier (corporation)*; . . . .[2]

■ In ascertaining the intent and effect of these statutes, which do not entirely synchronize with each other, guidance is to be found in certain fundamental principles. A paramount one, which is deeply engrained in the history of our country and our systems of law and justice, is recognition of the fact that it is inherent in the nature of man to desire that his activities be as free from restraints as possible. We are in entire accord with the idea that it should be the policy of the law to serve that objective. But it must also be realized that in doing so there is an apparent paradox in that the assurance of freedoms to one man requires reciprocal restraints to assure similar freedoms to others; and that this increases proportionately as concentrations of population and variations in activity increase. Nevertheless, in consonance with the paramount objective stated above, the rule is fundamental that restraints or duties imposed by law must be clear and unequivocal.

■ In harmony with this it is well established that a regulatory body such as the Public Service Commission, which is created by and derives its powers and duties from statute, has no inherent regulatory powers, but only those which are expressly granted, or which are clearly implied as necessary to the discharge of the duties and responsibilities imposed upon it.[3] Further, consistent with the above stated rationale, when a person is confronted with inconsistent statutes, by one of which he would be subject to duties or restraints, and by the other he would be exempt therefrom, he is entitled to the benefit of the statute most favorable to his freedom of action.[4]

■ When the statutes discussed above are analyzed in the light of the policy considerations just stated, we think the Commission was correct in reasoning thus: That because the legislature appears to have deliberately and advisedly included only "scheduled" aircraft carriers in its definition of common carrier (Section 54–2–1(14) ) which in turn is included in the term "public utilities" which are subject to

---

2. See S.L.U.1969, Chap. 153, Sec. 1, amending Sec. 54–2–1, U.C.A.1953. It is significant that it was upon third reading and before final passage in the House that the word "scheduled" was inserted before the phrase "aircraft carrier." See House Journal, Utah Legislature, p. 831 (38th Sess., 1969).

3. See Williams v. Public Service Commission, 21 Utah 2d 155, 442 P.2d 920; State v. Dept. of Public Service, 21 Wash.2d 201, 150 P.2d 709; 64 Am.Jur.2d, Public Utilities § 232.

4. See 3 Sutherland Statutory Construction § 65.02 (4th Ed.)

the jurisdiction of the Commission, there is no clear and specific investiture of the Commission with jurisdiction over aircraft carriers such as Dinaland which offer only "nonscheduled" flights.[5] Accordingly, the decision of the Commission is affirmed.

Costs awarded to the defendant Dinaland as against Basin Flying Service. (All emphasis added.)

HENRIOD, C. J., and ELLETT, TUCKETT and MAUGHAN, JJ., concur.

5. Though not material to this decision we make two observations: First, such air carriers are not entirely without regulation, but are subject to those promulgated by the Utah Board of Aeronautics. See Aeronautical Regulatory Act, Title 2, Chapter 1, U.C.A.1953. Second, if, as protestant has argued, the legislature intended to bring *all* aircraft carriers under regulation of the Public Service Commission, and not solely *scheduled* aircraft carriers as appears plainly in the 1969 amendment, it can easily make that intent clear.