KEARNS–TRIBUNE CORPORATION, a Utah corporation, Plaintiff,

v.

PUBLIC SERVICE COMMISSION OF UTAH; Brent H. Cameron, Chairman; David R. Irvine, Commissioner, and James M. Byrne, Commissioner, Defendants.

MOUNTAIN FUEL SUPPLY COMPANY, Plaintiff,

v.

PUBLIC SERVICE COMMISSION OF UTAH; Brent H. Cameron, Chairman; David R. Irvine, Commissioner; James Byrne, Commissioner, Defendants.

Nos. 19208, 19209.

Supreme Court of Utah.

May 1, 1984.

Gary G. Sackett, Patricia S. Drawe, Richard L. Hinckley, Arthur A. Allen, Jr., Salt Lake City, for Mountain Fuel Supply Co.

Donald B. Holbrook, Jones, Waldo, Holbrook & McDonough, Lee Curtis, Salt Lake City, for Newpaper Agency Corp.

Michael Ginsberg, Asst. Atty. Gen., Salt Lake City, for Div. of Public Utilities.

Ted D. Smith, Salt Lake City, for Mountain States Tel. & Tel. Co.

DURHAM, Justice:

Kearns-Tribune Corporation and Mountain Fuel Supply Company (Mountain Fuel) challenge a rule of the Utah Public Service Commission (PSC) imposing a "tagline" requirement on certain advertising by Mountain Fuel. We set aside the rule for lack of statutory authority.

Paragraph 3 of the PSC's rule A67–05–100 states that "[a]ll electric and natural gas utility advertising which is promotional, institutional, or political in nature must clearly identify its source of funding." In its practical effect, the rule has resulted in Mountain Fuel's including a tagline on its promotional, institutional and political advertising announcing that the advertisement was not paid for at customer expense. Mountain Fuel challenges this requirement on several grounds. We treat only the issue of statutory authority, which is dispositive.

 The PSC has no inherent regulatory powers. *Basin Flying Service v.*

*Public Service Commission,* Utah, 531 P.2d 1303, 1305 (1975). However, the PSC has the statutory authority to determine the rates Mountain Fuel may charge its customers. U.C.A., 1953, § 54–4–4 (1983 Supp.). Reasonably included in this authority is the power to determine what advertising expenses may be passed on by the utility to consumers. *Id.; see also* U.C.A., 1953, §§ 54–4–1, 54–4–18, 54–4–26. The authority to oversee allocation of expenses as a factor in rate regulation, however, does not necessarily provide the PSC with *carte blanche* to regulate all aspects of advertising. We must decide whether the legislative grant to the PSC reasonably includes the authority to impose a tagline requirement on some of Mountain Fuel's public advertisements. This is a general question of law, and we apply a correction-of-error standard with no necessity of deferring to the expertise of the PSC. *Utah Department of Administrative Services v. Public Service Commission,* Utah, 658 P.2d 601, 608 (1983).

In a ruling on a similar tagline requirement, the Oregon Court of Appeals held that the tagline requirement was not within the authority delegated to the Public Utility Commissioner of Oregon. *Pacific Northwest Bell Telephone Company v. Davis,* 43 Or.App. 999, 608 P.2d 547, 553 (1979). This holding was grounded on the absence of a "clearly defined statutory grant of authority" for the enactment of the tagline rule. 608 P.2d at 552. The relevant Oregon statutes included broad language similar to Utah's § 54–4–1, on which the PSC relies in this case. Section 54–4–1, U.C.A., 1953 (1983 Supp.), "General jurisdiction," states:

> The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state, and to supervise all of the business of every such public utility in this state, and to do all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction. . . .

The Oregon statute at issue in *Davis, supra*, ORS 756.040(2), states:

> The commissioner is vested with power and jurisdiction to supervise and regulate every public utility, railroad, air carrier and motor carrier in this state, and to do all things necessary and convenient in the exercise of such power and jurisdiction.

608 P.2d at 551. Despite the broad language of the Oregon statute, and further expansive language giving the commissioner the authority to "adopt and amend reasonable and proper rules and regulations relative to all statutes administered by him," *id.*, the Oregon court was unable to find a clearly defined statutory grant of authority authorizing the imposition of a tagline because the statutory scheme nowhere mentioned the authority to *regulate advertising* as a discrete function. We are similarly unable to find any clearly defined statutory grant to the PSC of authority to regulate utility advertising.

■ The lack of explicit statutory authority to "regulate advertising," however, is not dispositive of the question before us because the PSC certainly has considerable latitude in performing its rate-regulation function. Any activities of a utility that actually affect its rate structure would necessarily be subject to some degree to the PSC's broad supervisory powers in relation to rates. The question, then, is whether the activity the Commission is attempting to regulate is closely connected to its supervision of the utility's rates and whether the manner of the regulation is reasonably related to the legitimate legislative purpose of rate control for the protection of the consumer. As the New York Court of Appeals observed:

> In such cases, the sheer breadth of delegated authority precludes a precise demarcation of the line beyond which the agency may not tread. What is called for, rather, is a realistic appraisal of the particular situation to determine whether the administrative action reasonably promotes or transgresses the pronounced legislative judgment.

*Consolidated Edison Company of New York v. Public Service Commission*, 47 N.Y.2d 94, 417 N.Y.S.2d 30, 33, 390 N.E.2d 749, 752 (1979), *rev'd on other grounds*, 447 U.S. 530, 100 S.Ct. 2326, 65 L.Ed.2d 319 (1980).

■ Having undertaken such an appraisal of the situation presented in this record, we are unable to find that the tagline requirement reasonably promotes the purpose of the statutory authorization granted to the PSC. The PSC has failed to articulate any legislatively intended public policy that is furthered by the operation of the tagline rule. The PSC can only claim that taglines allow customers to "better understand" how the regulatory process operates and when advertising costs are or are not being passed on to them in their utility bills. The objective of greater consumer understanding is undoubtedly beneficial to the public in general, but it is only peripheral to those purposes for which the Legislature created the PSC, namely regulation of utility rates. The *publication* of the manner of allocation of advertising costs, as opposed to control of the allocation itself, can have no effect on a utility's rate structure or the PSC's oversight thereof.

■ The PSC argues that the tagline requirement does have as its purpose some tangential effect on the regulation of rates, namely the encouragement of greater public scrutiny of utility advertisements, with the assumption that a better-informed public will participate more meaningfully in public hearings before the Commission. However, given the extremely remote nature of the connection between the tagline requirement and the rate-regulation function, we believe that less restrictive alternatives are clearly adequate. We emphasize that we do not reach the question of whether the tagline requirement infringes on any free speech right secured by the constitutions of the United States or Utah. However, it does appear significant that alternative methods of regulating the allocation of the costs of utility advertising exist, such as a regular review of utility

advertisements and specific guidelines respecting charges. Presumably, such guidelines and review are now being used by the PSC. Such methods are less intrusive in the management of the utility and more directly related to the fulfillment of the PSC's specific statutory mandate. The tagline requirement goes beyond both the spirit and the letter of that mandate.[1]

We hold that the PSC has no statutory authority to impose the tagline requirement on Mountain Fuel. Rule A67–05–100(3) of the PSC is set aside.

HALL, C.J., OAKS, J., and J. DENNIS FREDERICK, District Judge, concur.

HOWE, Justice (dissenting):

I dissent. U.C.A., 1953, § 54–4–1 expressly gives the Public Service Commission broad powers to regulate public utilities in this state and to supervise all of their business:

> The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state, and to supervise all of the business of every such public utility in this state, and to do all things, *whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction* ....

(Italics added.) The majority concedes that the PSC may determine the rates Mountain Fuel charges its customers and that reasonably included in that authority is the power to determine what advertising expenses may be passed on by Mountain Fuel to its customers. Certainly if that is true (and I agree it is), the PSC can reasonably and conveniently disclose that determination to the consuming public. The tagline requirement is that means of disclosure.

In its findings, the PSC found that complaints regarding advertising by utilities constitute a substantial percentage of the daily complaints that the PSC receives from consumers. It further found that because of the rapid and alarming rate of increase of energy costs, consumers are aware of expenses of utilities which are reflected in higher charges to the consumer; that every time they view, read or hear a message or advertisement from a regulated utility they are so reminded. Although the total advertising expense per consumer included in rates in 1980 was only $1.65 for Mountain Fuel and $2.06 for Utah Power & Light Co., the public perception is that advertising costs are a much greater factor in rising utility bills. Con-

---

1. The dissent grounds its argument on the benefits resulting from greater communication between the public and the PSC and the convenient manner of communication that the tagline supplies. It states that the "PSC can serve the public interest by promoting the exchange of information regarding rates." As the PSC has no broad statutory authority to "serve the public interest," the exchange of information must be a practice "necessary or convenient" in the exercise of the PSC's regulation of rates. The dissent does not show, and we cannot see, why this exchange of information is necessary; it must be only convenient. With this we have no quarrel. We agree that "[c]ertainly ... the PSC can reasonably and conveniently disclose ... to the consuming public" its determination of what advertising expenses may be passed on to customers. Yet because the PSC can make its own disclosure does not mean it has the authority to force this disclosure to be made by Mountain Fuel. The dissent makes a peculiar leap when it concludes that the PSC can impose a tagline requirement because it is a "convenient" way of disseminating helpful or useful information.

The dissent thereby undertakes a novel construction of § 54–4–1, concluding that the statute grants the PSC the authority to accomplish in a "convenient" manner whatever it finds "convenient" to do in the exercise of its power and jurisdiction. Where this interpretation of convenience would finally lead, it is impossible to say; certainly it appears to have no defined limits.

The dissent also claims that we rely "primarily" upon *Davis* and makes a point of characterizing *Davis* as "a case decided by an intermediate court of appeal." The point is irrelevant, for we rely on *Davis* not as precedent, but rather for the quality of its reasoning. Furthermore, the claim that the *Davis* holding is a major support of this opinion is inaccurate. As we have stated, the lack of explicit statutory authority alone is not dispositive of the issue before us. We have also considered the close connection of the regulated activity to the process of supervising rates and the reasonable relation of the disputed manner of regulation to the legislative grant of authority to regulate. To this analysis, the dissent offers no response.

sumers do not readily understand why monopolistic utilities need spend any money advertising.

With that backdrop the PSC held a hearing in 1980 to consider the adoption of the advertising standards set forth in the Public Utility Regulatory Policies Act of 1978 (PURPA), 16 U.S.C. §§ 2601, et seq. Following the hearing, the PSC issued its Report and Order in which it substantially adopted the standards with the requirement that in "promotional, institutional and political" advertising the source of funds for such advertisement should be clearly identified therein. Promotional, institutional and political advertising was excluded in the rule from utility expenses in the determination of rates.

The role of the PSC is a delicate one, balancing the interests of the consumers against the problem of utilities in providing adequate supplies of energy at an ever-increasing cost to them. The PSC can serve the public interest by promoting the exchange of information regarding rates. Rather than force interested consumers to come to the PSC to learn what advertising costs go into rates, it is reasonable and convenient for the PSC to require this fact to be made known on the advertising itself. Public exposure to utility costs serves to throw light on a subject where consumer ignorance breeds mistrust. The PSC does not censor or suppress any advertising of any utility. The utilities remain free to advertise when, where and what they will. Only that advertising which is not paid for by the consumers is identified by a tag line. The utilities should be anxious to comply since compliance can only result in increased good will for them.

The majority opinion relies primarily upon a case decided by an intermediate court of appeal, *Pacific Northwest Bell Telephone Co. v. Davis*, 43 Or.App. 999, 608 P.2d 547 (1979), as authority for denying the PSC the power to impose a tagline requirement. In my judgment that case is of doubtful precedent since the court there relied upon an earlier Oregon case which had held that the State Board of Pharmacy could not by rule prohibit the public advertising of prescription drugs. As pointed out by Judge Roberts in her dissent in *Pacific Northwest Bell*, denying a competitive profession the right to advertise is quite a different thing than requiring a regulated monopolistic public utility to communicate with its customers about a cost which may be passed on to them.

I view the tagline requirement as a necessary and convenient adjunct to the powers of the PSC to regulate the business of utilities with its consumers under § 54-4-1. Contrary to the assertion in the majority opinion that there exist alternate methods, the PSC expressly found that there was no other effective way to communicate with consumers as to the source of funding for advertising than the tagline requirement. We should accord great weight to this conclusion since it falls within the expertise of the PSC to determine that matter. The majority too narrowly views the "necessary or convenient" powers conferred by the legislature on that body.

STEWART, J., does not participate herein; J. DENNIS FREDERICK, District Judge, sat.