**HI–COUNTRY ESTATES HOME-OWNERS ASSOCIATION, a Utah corporation, Plaintiff,**

v.

**BAGLEY & COMPANY, a Utah corporation; J. Rodney Dansie; Gerald Bagley; Hi–Country Estates, Inc., a dissolved Utah corporation; Keith Spencer; Charles E. Lewton; and unknown persons claiming an interest in Hi–Country Estates Subdivision, Defendants.**

**FOOTHILLS WATER COMPANY, a Utah corporation, Counterclaimant and Petitioner,**

v.

**HI–COUNTRY ESTATES HOME-OWNERS ASSOCIATION, a Utah corporation; W. Norman Sims; and William P. Turner, Counterclaim Defendants and Respondents.**

No. 940046.

Supreme Court of Utah.

July 20, 1995.

Larry R. Keller, Salt Lake City, for Hi–Country Estates Homeowners Ass'n.

Ralph J. Marsh, Salt Lake City, for Bagley and Bagley & Co.

Val R. Antczak, Salt Lake City, for Dansie and Foothills Water Co.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

RUSSON, Justice:

We granted certiorari for the narrow purpose of reviewing the court of appeals' decision concerning the jurisdiction of the Public Service Commission (the PSC) as it relates to issues in this case. We reverse and remand.

## FACTS

Because the issues involved on certiorari relate solely to the PSC's jurisdiction, we recite only the facts that are pertinent to that issue. A full discussion of the facts concerning other issues raised before the court of appeals in this matter can be found in *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.*, 863 P.2d 1, 2–7 (Utah Ct.App. 1993), *cert. granted*, 879 P.2d 266 (Utah 1994).

This case involves a controversy between Foothills Water Company (the Water Company) and the Hi–Country Estates Homeowners Association (the Homeowners Association) concerning the ownership of a water system, two lots upon which the system's water tanks are located, and a well water right related to the water system.

In March 1985, the Homeowners Association, which is comprised of the owners of lots in the Hi–Country Estates subdivision, brought this action in district court, seeking to quiet title to the subdivision's water system, the two lots upon which the system's water tanks are located, and the related well

water right, in the name of the Homeowners Association. The Water Company responded by filing a counterclaim, seeking to quiet title to the water system, the water lots, and the water right in its name.[1] Gerald H. Bagley, a former owner and operator of the water system, also counterclaimed, arguing that if the court determined that the Homeowners Association owned the water system, it should be required to reimburse him for the cost of improvements he made to the water system, as well as for all expenses related to the operation and maintenance of the water system.[2]

While this matter was pending before the district court, a dispute arose between the Water Company and the Homeowners Association concerning increases in the rates charged by the Water Company. At a rate-setting hearing before the PSC in January 1986, the Homeowners Association argued that the Water Company should not be allowed to include the cost of the water system as a capital investment in its rate base. The PSC ruled that, pending resolution of the ownership dispute in district court, only a small portion of the Water Company's capital investment could be properly included in its rate base. On March 17, 1986, the PSC issued its final report and order, finding that only $16,334.99 of the improvements to the water system could be included in the rate base as legitimate costs thereof.

Trial on the quiet title action began in district court on August 25, 1988. At that time, the parties agreed to stipulate to certain facts, proffer evidence on the remaining facts, brief all issues, and submit them to the court for decision. On October 14, 1988, the parties filed a stipulated statement of undisputed facts and disputed contentions.

Following a hearing on October 25, 1988, the district court entered its findings of fact, conclusions of law, and judgment declaring that the Homeowners Association "is the legal owner of the disputed water system, which includes the water rights, the water lots, the water tanks, and the water lines." However, the court conditioned its ruling upon payment by the Homeowners Association to the Water Company of an amount to be determined at a later evidentiary hearing for improvements made to the water system.

The Homeowners Association subsequently moved for summary judgment on the issue of the amount of reimbursement it owed to the Water Company. The association asserted that the district court was bound by the PSC's determination that only $16,334.99 of the improvements to the water system could be included in the rate base. The court denied the motion.

An evidentiary hearing was held in late July and early August 1990 to determine the amount of reimbursement owed by the Homeowners Association to the Water Company. Applying a theory of unjust enrichment, the district court determined that the Homeowners Association owed the Water Company $98,500 for the "entire water system, the improvements made thereon from 1974 to 1985, and the water right." In an order dated October 31, 1990, the court directed the association to pay the sum of $98,500 to the Water Company no later than August 15, 1991. The court additionally ruled that a 1977 well lease agreement between Bagley, who owned and operated the water system at that time, and Jessie J. Dansie, the owner of the well in question, in which Dansie agreed to supply water from the Dansie well to the water system, was a valid and binding encumbrance on the water system and required the association to permit the Dansies to receive and transport water through the subject water system free of charge as long as the system is operative.

At a subsequent informal conference between the district judge and counsel for the parties, the Water Company and Bagley orally moved that the district court clarify its October 31, 1990, order to provide that if the

---

1. The Water Company additionally sought damages for slander of title from the Homeowners Association and several individuals who are not parties to this appeal. However, this claim was dismissed by the district court for "lack of proof" and is not before this court on certiorari.

2. Although Bagley originally brought the counterclaim for reimbursement, the district court determined that the Water Company was the party properly entitled to reimbursement because Bagley had assigned all his rights to the Water Company.

■■■■■■■■■■■■■■■■■■■■

Homeowners Association failed to pay the Water Company by August 15, 1991, the court would enter a judgment quieting title to the water system in the Water Company. The district court granted this motion and entered an order clarifying its prior order on February 5, 1991.

On August 20, 1991, after being notified by the Water Company that the Homeowners Association had not paid the reimbursement sum of $98,500 as required by the court's February 5 order, the district court entered a judgment quieting title in the Water Company.

On appeal to the Utah Court of Appeals, the Homeowners Association asked the court to (1) reverse the district court's judgment quieting title in the Water Company and quiet title in its favor, (2) reverse the district court's denial of its motion for summary judgment on the issue of the amount it owed to the Water Company for improvements to the water system for the years 1974 to 1985, and (3) reverse the district court's conclusion that it was required to reimburse the Water Company as a condition precedent to quieting title.

The court of appeals (1) reversed the district court's judgment quieting title in the Water Company, holding that legal title was rightfully in the Homeowners Association; (2) reversed the district court's denial of summary judgment on the issue of the compensation owed to the Water Company, deferring to the PSC's determination that only $16,334.99 of the improvements to the water system were includable in the rate base, and (3) reversed the district court's judgment addressing the validity of the 1977 well lease agreement on the ground that the PSC had previously invalidated that agreement.[3]

The Water Company filed a petition for a writ of certiorari with this court. We granted the said writ only for the narrow purpose of reviewing the court of appeals' decision

concerning the PSC's jurisdiction as it relates to the issues in this case.

On certiorari, the Water Company raises the following two arguments in response to the court of appeals' opinion: First, it asserts that the PSC did not determine the fair market value of the property in question for all purposes, including unjust enrichment, nor did it have the power to do so; and second, it claims that the PSC did not invalidate the 1977 well lease agreement and did not have the power to do so. The Homeowners Association responds that (1) the PSC has the power to determine the fair market value of property for all purposes and therefore the court of appeals correctly ruled that the district court was bound by the PSC's determination that only $16,334.99 of the improvements to the water system were includable in the rate base, and (2) the PSC has the power to invalidate the 1977 well lease agreement and did invalidate that agreement.

## SUMMARY JUDGMENT

In its motion for summary judgment on the issue of the amount of reimbursement owed to the Water Company, the Homeowners Association asserted that the district court could award the Water Company only $16,334.99, the amount that the PSC determined could be included in the rate base as legitimate costs of improvements to the system. Specifically, the association argued that the PSC had the power to determine the fair market value of the water system for all purposes and therefore the district court was bound by the PSC's determination. The district court denied the motion and, using a theory of unjust enrichment, determined that the association owed the Water Company $98,500 for the "entire water system, the improvements made thereon from 1974 to 1985, and the water right." The court of appeals reversed, holding that the PSC's rate base determination compelled the district

---

3. In the same opinion, the court of appeals also reversed an interlocutory order of the district court which permitted the Water Company to transfer water through the system to customers within its service area but outside of the subdivision, provided that these customers pay a fair use fee. *Hi–Country Estates Homeowners Ass'n v.* *Bagley & Co.,* 863 P.2d 1, 12 (Utah Ct.App.1993), *cert. granted,* 879 P.2d 266 (Utah 1994). However, subsequent to the issuance of that opinion, the Water Company has been decertified as a public utility by the PSC. Accordingly, its rights to transfer water are now moot.

court to limit its reimbursement award to $16,334.99.

■ The PSC has only the rights and powers granted to it by statute. *Williams v. Public Serv. Comm'n,* 754 P.2d 41, 50 (Utah 1988). Utah Code Ann. § 54–4–1 states in pertinent part:

> The commission is hereby vested with power and jurisdiction to supervise and regulate every public utility in this state, and to supervise all of the business of every such public utility in this state, and to do all things, whether herein specifically designated or in addition thereto, which are necessary or convenient in the exercise of such power and jurisdiction[.]

In keeping with this general grant of power, Utah Code Ann. § 54–4–21 specifically provides:

> The commission shall have power to ascertain the value of the property of every public utility in this state and every fact which in its judgment may or does have any bearing on such value. The commission shall have power to make revaluations from time to time and to ascertain the value of new construction, extensions, and additions to the property of every public utility; provided, that the valuation of the property of all public utilities doing business within the state located in Utah as recorded in accordance with Section 54–4–22 of this chapter shall be considered the actual value of the properties of said public utilities in Utah unless otherwise changed after hearings by order of the commission. In case the commission changes the valuation of the properties of any public utility said new valuations found by the commission shall be the valuations of said public utility *for all purposes provided in this chapter.*

Utah Code Ann. § 54–4–21 (emphasis added); *see also* Utah Code Ann. § 54–4–4 (granting PSC broad discretion in establishing rates for public utilities).

■ "It is well established that the Commission has no inherent regulatory powers other than those expressly granted or clearly implied by statute." *Mountain States Tel. & Tel. Co. v. Public Serv. Comm'n,* 754 P.2d 928, 930 (Utah 1988) (citing *Basin Flying Serv. v. Public Serv. Comm'n,* 531 P.2d 1303, 1305 (Utah 1975)). When a " 'specific power is conferred by statute upon a tribunal, board, or commission with limited powers, the powers are limited to such as are specifically mentioned.' " *Union Pac. R.R. v. Public Serv. Comm'n,* 103 Utah 186, 197, 134 P.2d 469, 474 (1943) (quoting *Bamberger Elec. R.R. v. Public Utils. Comm'n,* 59 Utah 351, 364, 204 P. 314, 320 (1922)); *accord Williams,* 754 P.2d at 50. "All powers retained by the PSC are derived from and created by statute. The PSC has no inherent regulatory powers and can only assert those which are expressly granted or clearly implied as necessary to the discharge of the duties and responsibilities imposed upon it." *Williams,* 754 P.2d at 50 (citing *Basin Flying Serv.,* 531 P.2d at 1305). Accordingly, "[t]o ensure that the administrative powers of the PSC are not overextended, 'any reasonable doubt of the existence of any power must be resolved against the exercise thereof.' " *Id.* (quoting *Public Serv. Comm'n v. Formal Complaint of WWZ Co.,* 641 P.2d 183, 186 (Wyo.1982)).

■ Despite its broad language, section 54–4–1 does not confer upon the Commission a limitless right to act as it sees fit, and this court has never interpreted it as doing so. *Mountain States Tel. & Tel. Co.,* 754 P.2d at 930. "Explicit or clearly implied statutory authority for any regulatory action must exist." *Id.* (citing *Utah Dep't of Business Regulation v. Public Serv. Comm'n,* 720 P.2d 420, 423 (Utah 1986); *Kearns–Tribune Corp. v. Public Serv. Comm'n,* 682 P.2d 858, 859 (Utah 1984)). Accordingly, the sections cited above clearly do not give the PSC absolute power to determine fair market value for all purposes, but merely for the purposes outlined in that chapter, that is, the purposes necessary to regulate and supervise public utilities. In fact, were we to hold otherwise and determine that the PSC can valuate property for all purposes, as the Homeowners Association would have us do, we would render the Utah Code internally inconsistent since the tax commission has the power to assess public utilities for the purposes

of taxation. *See* Utah Code Ann. § 59–2–204.

■ The district court's valuation of the property and water right in question did not involve the fair market value of the water system for rate-making purposes but, rather, involved the actual fair market value of the property for the purpose of determining the amount of unjust enrichment. Accordingly, the court of appeals erred in holding that the PSC has the authority to determine the fair market value of the property for all purposes and declaring deference to the PSC as to the value of the property in question for purposes of determining the amount of unjust enrichment.

■ Moreover, even if the PSC had the power and authority to determine fair market value of the water system for all purposes, it did not do so in the present case. It is clear from the PSC's March 17, 1986, order that it was determining the value of the water system only for the purposes of rate-making. In fact, the first sentence of that order states, "Pursuant to notice duly served, this matter came on *for general rate hearing* on January 22, 23, 24, [27,] and 28, 1986, before Kent Walgren, Administrative Law Judge for the Utah Public Service Commission." (Emphasis added.) Furthermore, the PSC did not find that $16,334.99 was the fair market value of the improvements to the system, but simply found that that figure represented "[the Water Company's] total allowable rate base." Finally, the findings of fact and conclusions of law supporting the PSC's order exclusively address the PSC's determination of the fair rate that the Water Company may charge its customers. Since (1) any order of the PSC must be narrowly construed as passing only upon the issues before it, *White River Shale Oil Corp. v. Public Serv. Comm'n,* 700 P.2d 1088, 1093 (Utah 1985), and (2) the PSC's March 17, 1986, order addressed the value of the water system solely for rate-making purposes, it was error for the court of appeals to order the district court to defer to this figure for purposes of unjust enrichment. Accordingly, the court of appeals erred in reversing the district court's denial of the Homeowners Association's motion for summary judgment on the issue of the amount of reimbursement owed to the Water Company and in ordering the district court to defer to the PSC.

## WELL LEASE AGREEMENT

In 1977, Bagley, the owner and operator of the subject water system at that time, and Dansie, the owner of the well in question, entered into a well lease agreement under the terms of which water from the Dansie well was supplied to the Hi–Country Estates subdivision water system. The lease stated that it had a ten-year term but could be renewed on April 10, 1987, "on terms to be agreed to by Bagley and Dansie." Subsequently, in 1980, Bagley transferred his interest in the water system to Jordan Acres, a limited partnership of which Bagley was a general partner. On June 7, 1985, this interest was transferred from Jordan Acres to the Water Company. In its March 17, 1986, order, the PSC found that the well lease agreement was "grossly unreasonable" and refused to impose its terms upon the Homeowners Association. The district court, on the other hand, ruled that the 1977 well lease agreement was a valid and binding encumbrance on the subdivision's water system. On appeal to the court of appeals, the Homeowners Association argued that the district court lacked jurisdiction to determine the validity of an encumbrance on a public utility and that the PSC's determination precluded the Water Company from asserting the validity of the well lease agreement. The court of appeals agreed and reversed the district court's order.

■ On certiorari, the Water Company argues alternatively that (1) the PSC's March 17, 1986, order did not invalidate the 1977 agreement, and (2) even if the PSC's order did purport to invalidate that agreement, the PSC did not have jurisdiction to do so. The Homeowners Association responds that the PSC's order did invalidate the 1977 agreement between Dansie and Bagley and therefore the court of appeals was correct in reversing the district court's order directing the association to provide the Dansies water as long as the system is operative.

The PSC's March 17, 1986, order specifically found:

11. On April 7, 1977, Jesse Dansie, as lessor, and Bagley as lessee, entered into a "Well Lease and Water Line Extension Agreement" (hereafter "Well Lease Agreement") for Well No. 1.... Under this ten-year lease (which expires in April 1987), in return for the use of the well and water therefrom, Bagley agrees to the following:

a. To pay $5,100 plus $300 per month for the first five years and $600 per month for the next five years.

. . . .

12. In 1980, the Subdivision water company was transferred from Bagley to another limited partnership, Jordan Acres ("Jordan Acres"), of which Bagley was a general partner. On June 7, 1985, ... the water company assets were transferred from Jordan Acres to [the Water Company], in return for all of [the Water Company's] outstanding shares.

On the basis of these and other findings, the PSC concluded:

The Commission finds that it is unreasonable to expect [the Water Company] to support the entire burden of the Well Lease Agreement. This Agreement, insofar as it relates strictly to benefits received by [the Water Company] ... is grossly unreasonable, requiring not only substantial monthly payments, but also showering virtually limitless benefits on Jessie Dansie and the members of his immediate family....

. . . .

... While no one can blame Mr. Dansie for desiring to provide free water to his children in virtual perpetuity, this Commission would be abrogating its statutory duty were it to impose such a burden on [the Water Company's] present and future customers.

. . . .

... We find that it would be unjust and unreasonable to expect [the Water Company's] 63 active customers [i.e., the Homeowners Association] to support the entire burden of the Well Lease Agreement....

. . . .

... The Commission has no objection to the Dansies continuing to obtain their water from Well No. 1, provided the actual pro-rata (not incremental) costs for power, chlorination and water testing involved in delivering that water are paid for by someone other than customers in [the Water Company's] service area [i.e., the members of the Homeowners Association].

Under the plain language of the PSC's order, the effect of that order was to prohibit the 1977 well lease agreement from affecting the rates paid by the Homeowners Association, not to invalidate the agreement altogether. In other words, the PSC's order did not purport to invalidate the 1977 agreement, it merely limited the amount that the Homeowners Association would pay for it, a matter clearly within the PSC's rate-making authority. Thus, the court of appeals incorrectly held that the PSC's order invalidated the 1977 well lease agreement.

■ In any event, the PSC did not have jurisdiction to invalidate the 1977 well lease agreement as long as that agreement did not impact the rates paid by the Homeowners Association. Although the PSC has power to construe contracts affecting matters within its jurisdiction such as rate-making, ordinary contracts unrelated to such matters are outside of the purview of PSC jurisdiction. *See Kearns–Tribune Corp. v. Public Serv. Comm'n,* 682 P.2d 858, 860 (Utah 1984) ("Any activities of a utility that actually affect its rate structure would necessarily be subject to some degree to the PSC's broad supervisory powers in relation to rates. The question, then, is whether the activity the Commission is attempting to regulate is closely connected to its supervision of the utility's rates and whether the manner of the regulation is reasonably related to the legitimate legislative purpose of rate control for the protection of the consumer."); *see also Garkane Power Ass'n v. Public Serv. Comm'n,* 681 P.2d 1196, 1207 (Utah 1984) (per curiam) (holding that not every contract entered into by a public utility is subject to the jurisdiction of the PSC; contracts such as those concerning the ordinary conduct of a business can be litigated only in district court

and not before the PSC). *See generally Williams v. Public Serv. Comm'n,* 754 P.2d 41, 50 (Utah 1988) (stating that " 'any reasonable doubt of the existence of any power [of the PSC] must be resolved against the exercise thereof' " (quoting *Public Serv. Comm'n v. Formal Complaint of WWZ Co.,* 641 P.2d 183, 186 (Wyo.1982))).

### CONCLUSION

On the basis of the foregoing, the court of appeals' reversal of the district court's denial of the Hi–Country Estates Homeowners Association's motion for summary judgment on the issue of the amount of reimbursement owed to Foothills Water Company is reversed. The court of appeals' determination that the PSC's order invalidated the 1977 well lease agreement between Bagley and Dansie is also reversed, and this matter is remanded to the court of appeals for further proceedings consistent with this opinion.

ZIMMERMAN, C.J., STEWART, Associate C.J., and HOWE and DURHAM, JJ., concur.