HI–COUNTRY ESTATES HOME-OWNERS ASSOCIATION, a Utah corporation, Plaintiff, Appellant, and Cross-appellee,

v.

BAGLEY & COMPANY, a Utah corporation; J. Rodney Dansie; Gerald Bagley; Hi–Country Estates, Inc., a dissolved Utah corporation; Keith Spencer; Charles E. Lewton; and unknown persons claiming an interest in Hi–Country Estates Subdivision, Defendants, Appellees, and Cross-appellants,

and

Foothills Water Company, a Utah corporation, Counterclaimant, Appellee and Cross-appellant.

No. 920450–CA.

Court of Appeals of Utah.

Dec. 5, 1996.

Larry R. Keller, Salt Lake City, for Appellant Hi–Country.

Ralph J. Marsh, Salt Lake City, for Appellee Bagley & Co.

Val R. Antczak, Salt Lake City, for Appellee Foothills Water Company.

Before BENCH, BILLINGS and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Hi–Country Estates Homeowners Association (Homeowners Association) seeks reversal of the district court's order of reimbursement requiring it to pay $98,500 to Foothills Water Company, and reversal of the district court's ruling that the 1977 Well Lease and Water Line Extension Agreement remains a valid encumbrance upon the subject water system. We reverse the district court's order of reimbursement, remanding to the court to determine the value of the improvements to the water system from 1974 to 1985 and the taxes paid by Foothills Water Company during this period. We affirm the district court's finding that the well lease agreement is a valid encumbrance on the water system.

## BACKGROUND

Because we have previously addressed the facts of this case, we recite only the facts that are relevant to the issues now before us.

For a full discussion of the facts relating to other issues and parties involved in this case see *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.*, 863 P.2d 1, 2–6 (Utah App. 1993), *cert. granted*, 879 P.2d 266 (Utah 1994), and *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.*, 901 P.2d 1017, 1018–20 (Utah 1995).

This case arose from a dispute between Foothills Water Company and Homeowners Association concerning which party owns the water system serving the Hi–Country Estates Subdivision and adjacent areas, the water right used to supply water through the system, and two lots upon which the system's water tanks are located. The parties also dispute the continuing validity of portions of a well lease agreement entered into in 1977 by Jesse H. Dansie, the owner of the well in question, and Gerald H. Bagley, the owner and operator of the subject water system at that time.[1]

Homeowners Association, which consists of the owners of lots in the Hi–Country Estates Subdivision, filed this action in district court in March 1985, seeking to quiet title to the water system, water right, and the water tank lots in its name. Foothills Water Company, which was operating the water system at the time, counterclaimed, seeking an order quieting title in its favor.[2]

In 1986, while this action was pending in the district court, the Public Service Commission (PSC) held hearings to determine the rate that Foothills Water Company could charge its customers. At these hearings, Homeowners Association challenged Foothills Water Company's inclusion of the water system as a capital investment in its rate base, claiming that the system belonged to Homeowners Association. In its final report and order, issued March 17, 1986, the PSC determined that Foothills Water Company could include only $16,334.99 of the improve-

---

1. Bagley was one of the original developers of the Hi–Country Estates Subdivision and the water system. He also operated and maintained the water system from 1973 to October 1985.

2. Bagley also counterclaimed, arguing that if the court quieted title in Homeowners Association, he should receive compensation for all sums expended in the construction and installation of

the water system, and all costs and expenses incurred in the operation and maintenance of the system. However, the district court ruled, and this court affirmed, that Bagley was not entitled to any compensation for operating losses and capital improvements to the water system because he had assigned all his rights to Foothills Water Company in 1985.

ments to the water system from 1974 to 1985 in its rate base. The PSC specifically concluded that all improvements before 1981 were not includable in the rate base because "Bagley was selling lots at a profit until 1976," and "[t]he improvements made between 1977 and 1980 were to have been provided by Bagley as part of the original system." The PSC therefore only allowed the improvements made between 1981 and 1985 to be included in the rate base.

The PSC's report also contained findings regarding the 1977 Well Lease and Water Line Extension Agreement. Under this well lease agreement, Dansie agreed to supply water from the Dansie well to the water system for ten years. In return, Bagley agreed, among other things, to provide Dansie and his immediate family with five free residential hook-ups to the water system and reasonable amounts of water through these hook-ups at no cost. Bagley also agreed that Dansie would be allowed to use any excess water not being used by Bagley or customers of the Hi–Country Estates Water Company for only the costs of pumping. The agreement further stated that Dansie would be allowed water on the same terms for as long as the water system existed. An amendment to the well lease agreement, made in July 1985, defined the "reasonable" amount of water to be provided at no cost to the Dansie family to be twelve million gallons of water per year.

In its final report, the PSC found this well lease agreement, "insofar as it relates strictly to benefits received by Foothills," to be "grossly unreasonable," and concluded that "it would be unjust and unreasonable to expect Foothills' 63 active customers to support the entire burden of the Well Lease Agreement." The PSC further concluded that the monthly lease payments by Foothills Water Company "will adequately cover the value of the benefit Foothills is receiving under the Lease." Noting that the lease agreement made Bagley personally responsible to fulfill the terms and conditions of the lease, whether or not a water company was created to which Bagley assigned the well lease agreement, the PSC determined that "the remaining burdens of the Lease should be Bagley's

personal obligation." The PSC concluded by stating that it had no objection to the Dansies continuing to obtain their water from Foothills Water Company, provided the cost of delivery was paid for by someone other than the customers in Foothills Water Company's service area (i.e., the members of the Homeowners Association).

On October 20, 1989, the district court determined in its findings of fact and conclusions of law that Homeowners Association owned the water system, but that Foothills Water Company was "entitled to reasonable reimbursement for improvements [made] by them to [Homeowners Association's] water system from 1974 to 1985." In its Order on Ownership Issues, also issued on October 20, 1989, the district court therefore ruled that Homeowners Association was the "legal owner of the disputed water system, which includes the water rights, the water lots, the water tanks, and the water lines." The court further ordered an evidentiary hearing "to establish the amount of reimbursement due to [Foothills Water Company] for the reasonable value of improvements." Finally, the court ruled that an order quieting title to the water system in Homeowners Association's name would "issue only upon payment ... of the Court's reimbursement order for improvements [made to the] water system for the years 1974 to 1985."

On December 1, 1989, Homeowners Association filed a motion for summary judgment on the "valuation issue," arguing that the district court was bound by the PSC's determination of the value of improvements to the water system between 1974 and 1985. The court denied the motion for summary judgment, and held a hearing "to determine fair compensation" on July 30, 31, and August 1, 1990.

On October 31, 1990, the district court entered its Order Regarding Amount Payable by Plaintiff for Subject Water System. The court ruled that Homeowners Association was entitled to an order quieting title to the water system in its name upon payment of $98,500 to Foothills Water Company. The court also ruled that the 1977 well lease agreement

is and remains a valid encumbrance upon the subject water system, and requires the owner of the subject water system to permit the Dansie family to receive and transport, free of charge, water through the subject system, in the amount of 12 million gallons per year or such larger amount as shall be permitted by the excess capacity of the system as long as the system exists and is operative.

Homeowners Association did not pay the $98,500 as ordered by the district court. Consequently, on August 20, 1992, the district court entered an order in favor of Foothills Water Company, quieting title to the disputed water system, water right, and other property in the name of Foothills Water Company.

Homeowners Association appealed the district court's rulings to this court, seeking reversal of the quiet title order in favor of Foothills Water Company, reversal of the determination that it was required to pay $98,500 as a condition precedent to receiving quiet title, and reversal of the district court's ruling that the well lease agreement is a valid encumbrance on the water system.

In our 1993 opinion, this court reversed the contingent district court order, and directed the district court to issue a quiet title order in favor of Homeowners Association. This court further concluded that the PSC's determination of the value of the improvements to the system was binding on the district court, and therefore reversed the district court's denial of summary judgment on the issue of compensation owed to Foothills Water Company. This court also reversed the district court's judgment regarding the validity of the well lease agreement, finding that the PSC had previously invalidated the agreement.

Foothills Water Company then filed a petition for writ of certiorari in the Utah Supreme Court, which granted the petition "for the narrow purpose of reviewing the court of appeals' decision concerning the PSC's jurisdiction as it relates to the issues in this case." The Utah Supreme Court first found that this court erred in ordering the district court to defer to the PSC. The court held that the PSC does not have the authority to determine fair market value for all purposes, but only for ratemaking purposes, whereas the district court's valuation of the property and water right "involved the actual fair market value of the property for the purpose of determining the amount of unjust enrichment." Thus, the supreme court found that this court erred in ordering the district court to defer to the PSC's valuation of the improvements.

The Utah Supreme Court likewise concluded that the PSC's order did not purport to invalidate the 1977 well lease agreement, nor would the PSC have jurisdiction to do so "as that agreement did not impact the rates paid by the Homeowners Association." The supreme court therefore reversed this court's determination that the PSC had invalidated the well lease agreement. The supreme court then remanded this case to this court for further proceedings consistent with its opinion.

## ISSUES

On remand from the Utah Supreme Court, this court identified and ordered two primary issues to be briefed by the parties and determined by this court: (1) whether the district court correctly determined the fair market value of the water right, water system, and lots was $98,500 under the theory of unjust enrichment, and (2) whether the district court correctly held that the well lease agreement was a valid and binding encumbrance on the water system.[3]

## REIMBURSEMENT ORDER

Homeowners Association first asserts that the district court erred in ordering it to reimburse Foothills Water Company $98,500

---

**3.** The Order on Briefing also listed three sub-issues: (1) whether the Utah Supreme Court's opinion requires affirmance of the district court's rulings; (2) whether the district court's determination of the value of the water system, water right, and lots was clearly erroneous; and (3) whether the well lease agreement is a binding encumbrance or whether the agreement has lapsed. Because these three sub-issues are encompassed by the two primary issues, we need not address these sub-issues separately.

for the value of the "entire water system, the improvements made thereon from 1974 to 1985 and the water right." Homeowners Association argues, among other things, that the district court erred in requiring it to reimburse Foothills Water Company for the *water right,* rather than merely the value of improvements to the system.[4] We agree that the district court erred in considering the value of the entire system and the water right, rather than the value of the improvements to the water system between 1974 and 1985.

Neither the Utah Supreme Court nor this court in our prior opinion explicitly addressed or rejected the argument that the district court erred in ordering Homeowners Association to pay Foothills Water Company for the entire water system and the water right. Therefore, this court may now address this argument.

In its findings of fact and conclusions of law, issued in October 1989, the district court concluded that Homeowners Association was "the legal owner of the disputed water system, which includes the water rights, the water lots, the water tanks, and the water lines," but that Foothills Water Company was "entitled to *reasonable reimbursement for improvements* [made] by them to [Homeowners Association's] water system from 1974 to 1985." (Emphasis added.) However, in the subsequent evidentiary hearing held to determine the amount of reimbursement owed to Foothills Water Company, the court received evidence regarding the value of the entire system, and not merely the value of the improvements. Following this hearing, the court ordered Homeowners Association to reimburse Foothills Water Company $98,-500 for the value of the *"entire water system,* the improvements made thereon from 1974 to 1985 *and the water right."* (Emphasis added.) As noted by this court in our 1993 opinion, the district court thus "not only eval-

uated improvements, but it evaluated the entire system and imposed payment for the whole system." *Hi–Country Estates Homeowners Ass'n v. Bagley & Co.,* 863 P.2d 1, 10 (Utah App.1993), *cert. granted,* 879 P.2d 266 (Utah 1994). Such an evaluation and order was inconsistent with the district court's prior proper ruling that Foothills Water Company was entitled to reimbursement only for the improvements to the system within the relevant eleven-year period.

The Utah Code contains two statutes providing for the recovery of the value of improvements made in good faith by one party to property that is subsequently found by a court to be owned by another party. As stated in our previous opinion, Utah's quiet title statute, Utah Code Ann. §§ 78–40–1 to – 13 (1992), requires a court to allow, as a setoff or counterclaim against any damages claimed by the plaintiff, the value of permanent improvements made in good faith by one holding under color of title adversely to the claims of the plaintiff. *Id.* § 78–40–5. Utah's occupying claimant statute, Utah Code Ann. §§ 57–6–1 to –8 (1994 & Supp. 1996), likewise allows an occupying claimant to recover the value of improvements placed upon property by the claimant in good faith while in possession of the property under color of title. *Id.* § 57–6–1, –2.

In discussing the latter statute, the Utah Supreme Court has held that the measure of recovery for the improvements is the increased value of the property due to the improvements. As the court stated, "the occupying claimant's measure of recovery is the extent to which his improvements enhance the value of the land, or in other words, the difference between the reasonable relative values of the land with and without the improvements." *Reimann v. Baum,* 115 Utah 147, 156, 203 P.2d 387, 391–92 (1949). The court further explained that, although "[t]he reasonable cost of the improvements,

---

4. Because we conclude that the district court should have determined only the value of the improvements to the water system, and not the value of the entire water system and water right, we do not reach Homeowners Association's additional arguments that the district court erred in requiring it to pay $98,500 for the water system and water right because the members of the

Association already paid for the water system when they purchased their lots (i.e., the cost of the water system was included in the purchase price of the lots), or because the water system as a whole is worth no more than $27,650, as testified to by Homeowners Association's expert witnesses.

alone, is not sufficient evidence of value, ... such cost may be considered together with all other evidence of value in determining the increase in value of the land on account of the improvements." *Id.* 203 P.2d at 392.

This measure of recovery for improvements is based on the equitable underpinnings of these statutes. Specifically referring to occupying claimant statutes, the Utah Supreme Court has explained that such statutes are "based upon the equitable doctrine of unjust enrichment," and are intended to "ameliorate the strict common law rule that the record owner is entitled to the improvements placed by another upon his property" by allowing the claimant "to recover the value of his improvements to the extent that they unjustly enrich the record owner by enhancing the value of his land." *Id.* The Utah Supreme Court has further explained that to allow a different measure of recovery, such as allowing the claimant to "recover costs of construction, disassociated from land value and not limited to the extent of enhancement of land value, which cost could well exceed such enhancement, would cast a burden upon the record owner greater than the equitable requirement that he do equity by paying for unjust enrichment." *Id.*

In addition to requiring plaintiffs in whom title is quieted to reimburse defendants for valuable, good faith improvements to the property, Utah courts have also required plaintiffs to reimburse defendants for taxes paid on the property. *See, e.g., Crystal Lime & Cement Co. v. Robbins,* 8 Utah 2d 389, 390–91, 335 P.2d 624, 624–25 (1959); *Adams v. Lamicq,* 118 Utah 209, 220, 221 P.2d 1037, 1042 (1950); *Reimann,* 203 P.2d at 388.

■ The district court's order that Homeowners Association pay Foothills Water Company $98,500 for the "entire water system, the improvements made thereon from 1974 to 1985 and the water right" is inconsistent with its earlier order and conclusions. We therefore remand to the district court to determine, in accordance with Utah law, the amount of the reimbursement order that is properly attributable to the value of improvements to the water system between 1974 and 1985, and the taxes paid by Foothills Water Company during the same period.[5]

## WELL LEASE AGREEMENT

Homeowners Association also argues that the district court erred in concluding that the well lease agreement constitutes a valid and binding encumbrance on the water system. Homeowners Association primarily argues that the agreement lapsed on its face in 1987, and because there is no evidence that the lease was extended or renewed, it could not encumber the water system beyond 1987.[6] Foothills Water Company responds that the express terms of the lease agreement provide that Dansie is to be provided with reasonable amounts of water at no cost for as long as the water system is in operation. The Utah Supreme Court's holding that this court's "determination that the PSC's order invalidated the 1977 well lease agreement between Bagley and Dansie is reversed" leaves open the issue of whether the well lease agreement is invalid on grounds other than the PSC's order.

■ The district court's interpretation of the well lease agreement presents a question of law. We therefore accord its interpretation of the agreement no deference, but re-

5. The court and parties may find that the appointment of a special master, pursuant to Rule 53 of the Utah Rules of Civil Procedure, would be useful in this case to assist in determining the value of the improvements to the water system.

6. Homeowners Association also asserts that this court should invalidate the well lease agreement because it would be "unfair and unjust" to impose its terms upon them. In response, Foothills Water Company argues that Homeowners Association's assertion that the agreement is unfair is solely based on the PSC's determination that the agreement is "grossly unreasonable." Foothills

Water Company suggests that because the Utah Supreme Court ruled that the PSC was without jurisdiction to construe the agreement, this court is prohibited from invalidating the agreement on the basis that it is unreasonable. However, this court is empowered to make its own determination separate and apart from the PSC's attempted action. Although we do not do so here, we could make a legal determination, independent of the PSC's conclusions, that the terms of the agreement are unreasonable as applied to Homeowners Association, and refuse to enforce the agreement on grounds of public policy.

view it for correctness. *Buehner Block Co. v. UWC Assocs.,* 752 P.2d 892, 895 (Utah 1988); *Equitable Life & Casualty Ins. Co. v. Ross,* 849 P.2d 1187, 1192 (Utah App.), *cert. denied,* 860 P.2d 943 (Utah 1993).

. The well lease agreement contains two provisions that are at issue here. First, the agreement states that "Bagley shall have the right to renew this Well Lease on terms to be agreed to by Bagley and Dansie *at. the termination of this Lease on April 10, 1987.*" (Emphasis added.) Second, the agreement states that

· Bagley, and his assigns or successors, agree to supply water to the Dansie property as provided for in this Agreement and *for such time beyond the expiration or termination of this Agreement* as water is supplied to any of the Hi–Country properties or that the lines and water system referred to in this Agreement are in existence.

(Emphasis added.)

■ We interpret a contract "so as to harmonize all of its provisions and all of its terms, and all of its terms should be given effect if it is possible to do so." *Buehner,* 752 P.2d at 895. Construing this agreement to give meaning to all its provisions, it is apparent that portions of the agreement were intended to have effect beyond the stated termination date of the well lease. There is no indication in the agreement that the termination date for the well lease was to control the entire agreement. Because, given a reasonable interpretation, these provisions at issue are not mutually exclusive, we reject Homeowner Association's argument that the termination date necessarily controls over the other provisions of the contract, and affirm the district court's ruling that the well lease agreement remains a binding encumbrance on the water system.

## CONCLUSION

The district court's final reimbursement order of $98,500 went beyond the determination of the reasonable value of improvements made to the water system from 1974 to 1985. We therefore remand to the district court to determine, in accordance with this opinion, the reasonable value of the improvements made from 1974 to 1985, and the taxes paid on the property by Foothills Water Company during the same period. We affirm, however, the district court's ruling that the well lease agreement is a valid encumbrance on the subject water system.

BENCH and BILLINGS, JJ., concur.