996 P.2d 534 (2000)
2000 UT 27
HI-COUNTRY ESTATES HOMEOWNERS ASSOCIATION, a Utah corporation, Plaintiff and Appellant,
v.
BAGLEY & COMPANY, a Utah corporation, J. Rodney Dansie, Gerald Bagley, Hi-Country Estates, Inc., a dissolved Utah corporation, Keith Spencer, and Charles Lewton, Defendants.
Foothills Water Company, a Utah corporation, J. Rodney Dansie, The Dansie Family Trust, Richard P. Dansie, Boyd W. Dansie, Joyce M. Taylor, and Bonnie R. Parkin, Counterclaimants and Appellees,
v.
Hi-Country Estates Homeowners Association, Counterclaim Defendant.
No. 981533.
Supreme Court of Utah.
January 28, 2000.
*535 Dale F. Gardiner, Larry R. Keller, Salt Lake City, for Homeowners Association
Ralph J. Marsh, Salt Lake City, for Bagley & Co.
R. David Grant, Val R. Antczak, Michael M. Later, Salt Lake City, for The Dansie Family Trust, Dansie family members, and Foothills Water Co.
RUSSON, Justice:
¶ 1 Hi-Country Estates Homeowners Association appeals from Third District Presiding Judge Leslie A. Lewis's interlocutory order reassigning this case to Judge Stephen L. Henriod. At the time the case was reassigned, the parties were in the midst of litigating a complex bifurcated trial and a motion to amend judgment was pending before Judge Pat B. Brian, who had presided over this case for over eleven years.

BACKGROUND
¶ 2 In March 1985, Hi-Country Estates Homeowners Association (the "Homeowners Association") initiated this action in Third District Court, seeking to quiet title in the name of the Homeowners Association to the water system of the Hi-Country Estates subdivision, the related well water rights, and two lots upon which the water system's water tanks are located (collectively, the "water system").[1] Foothills Water Company (the "Water Company") responded by filing a counterclaim, seeking to (1) quiet title to the water system in the Water Company's name; (2) be reimbursed for improvements made to the water system, expenses in operating and maintaining the water system, and taxes paid on behalf of the water system;[2] and (3) enforce a 1977 well lease agreement between Gerald Bagley and Jesse Dansie, which allegedly encumbered the water system.[3]
*536 ¶ 3 The parties tried this dispute before Judge Brian, and on October 20, 1989, Judge Brian entered judgment declaring that the Homeowners Association owned the water system. Judge Brian conditioned his ruling, however, upon the Homeowners Association's paying the Water Company for improvements made to the water system, in an amount to be determined later at an evidentiary hearing.
¶ 4 After an evidentiary hearing in the summer of 1990, Judge Brian ordered the Homeowners Association to pay $98,500 to the Water Company as reimbursement, and also held that the 1977 well lease agreement was a valid encumbrance on the water system. As of August 20, 1991, the Homeowners Association had failed to pay the Water Company, so Judge Brian entered an order quieting title to the water system in the Water Company.
¶ 5 A series of appeals ensued, culminating in the court of appeals' reversal of Judge Brian's judgment quieting title in the Water Company, see Hi-Country Estates Homeowners Ass'n v. Bagley & Co., 863 P.2d 1, 7-8 (Utah Ct.App.1993), and the court of appeals' later reversal of Judge Brian's reimbursement order and affirmance of Judge Brian's validation of the 1977 well lease agreement, see Hi-Country Estates Homeowners Ass'n v. Bagley & Co., 928 P.2d 1047, 1050-53 (Utah Ct.App.1996).
¶ 6 On remand from the court of appeals, two issues remained before Judge Brian: (1) the proper amount the Homeowners Association owed the Water Company as reimbursement; and (2) adjudication of claims under the 1977 well lease agreement. Judge Brian bifurcated the trial of these two issues.
¶ 7 On April 13, 1998, after completing a trial of the first issue, regarding reimbursement, Judge Brian ordered the Homeowners Association to pay $15,080.18 to the Water Company. The Water Company, however, claimed that this amount was insufficient, and moved to amend judgment on April 23, 1998.
¶ 8 Meanwhile, Judge Brian had set the second issue, regarding the well lease claims, for a trial to begin July 13, 1998. On June 29, 1998, however, the parties received a letter from Judge Ronald E. Nehring stating that this case "has been assigned to me as the trial judge. . . . [I]t is necessary for me to disqualify myself from this matter. I will seek to have the case re-assigned as soon as possible." The parties had not been previously informed of any need or plan to reassign the case, and no explanation was provided to the parties for the purported reassignment to Judge Nehring.[4] At this point, the Water Company's motion to amend Judge Brian's judgment was still pending and the trial on the second issue had not yet commenced.
¶ 9 After receiving Judge Nehring's letter, the Homeowners Association filed a motion with Third District Presiding Judge Leslie A. Lewis to reassign the case back to Judge Brian. However, on July 15, 1998, Judge Lewis issued a minute entry reassigning the case to Judge Henriod on the basis of Judge Nehring's recusal, without providing any explanation for the original transfer from Judge Brian to Judge Nehring. On August 12, 1998, Judge Lewis filed a second minute entry denying the Homeowners Association's motion to reassign the case to Judge Brian.[5] In this second minute entry, Judge Lewis stated that the case would remain before Judge Henriod because she "did not want to facilitate any forum-shopping on this case." This interlocutory appeal followed.
¶ 10 On appeal, the Homeowners Association contests the unexplained transfer of its case from Judge Brian to Judge Nehring and then to Judge Henriod. The Homeowners Association asserts four grounds for its appeal, arguing that the transfer violates (1) the Utah Rules of Civil Procedure and the Rules of Judicial Administration; (2) article VIII, sections 4 and 12 of the Utah Constitution; (3) the due process clause of article I, section 7 of the Utah Constitution; and (4) *537 the open courts provision of article I, section 11 of the Utah Constitution. We find that the first ground for this appeal is dispositive, and we therefore do not address the other grounds for the Homeowners Association's appeal.

STANDARD OF REVIEW
¶ 11 The Rules of Judicial Administration grant discretion to the presiding judge to assign cases. See Utah Code Jud. Admin. Rule 3-104(3)(E) (1999). Thus, we review the presiding judge's decision in this case under an abuse of discretion standard.

DISCUSSION
¶ 12 The Homeowners Association appeals from Judge Lewis's reassignment of this case to Judge Henriod and subsequent denial of their motion to remand this case to Judge Brian  acts memorialized in unsigned minute entries. These minute entries were premised upon a transfer  from Judge Brian to Judge Nehring  that the Homeowners Association alleges should not have occurred in the first place. The Homeowners Association asks us to review acts of the presiding judge that are memorialized in unsigned minute entries and without any record of an order embodying the initial transfer of this case from Judge Brian.
¶ 13 The dissent argues that these facts deprive us of jurisdiction over this case because such administrative acts of the presiding judge do not constitute appealable orders. The dissent's argument neglects the fact that this court is entrusted with the authority to supervise and oversee the administration of the lower courts of this state, including administrative rules or procedures governing the transfer of a case from one judge to another. As we have stated in this regard, this court has the "constitutional authority to manage the appellate process, as well as inherent supervisory authority over all courts of this state." State v. Thurman, 846 P.2d 1256, 1266 (Utah 1993).
¶ 14 The Utah Code entrusts district court presiding judges with a duty to "exercis[e] powers and perform[] administrative duties as authorized by the Judicial Council." Utah Code Ann. § 78-3-29(5)(b) (Supp.1999). These powers and administrative duties are set forth in the Rules of Judicial Administration, as promulgated by the Judicial Council, and include assigning cases among judges within the judicial district:
Rule 3-104. Presiding Judges.
. . . .
(E) Docket management and case and judge assignments.

(i) The presiding judge shall monitor the status of the dockets in the court and implement improved methods and systems of managing dockets.
(ii) The presiding judge shall assign cases and judges in accordance with supplemental court rules to provide for an equitable distribution of the workload and the prompt disposition of cases.
(iii) Individual judges of the court shall convey needs for assistance to the presiding judge. The presiding judge shall, through the Administrative Office, request assistance of visiting judges when needed to handle the workload of the court.
(iv) The presiding judge shall discuss problems of delay with other judges and offer necessary assistance to expedite the disposition of cases.
Utah Code Jud. Admin. Rule 3-104(3)(E). Thus, rule 3-104 grants authority to the presiding judge to make initial case assignments and to reassign cases when necessary. Rule 3-108, for instance, enumerates several justifications for reassignment within the particular context of judicial assistance:
Rule 3-108. Judicial Assistance
. . . .
(A) to prevent the occurrence of a backlog in the court's calendar;
(B) to reduce a critical accumulated backlog;
(C) to handle a particular case involving complex issues and extensive time which would have a substantial impact on the court's calendar;
(D) to replace a sitting judge who is absent because of assignment as a tax *538 judge, illness or to replace the judges in that location because of disqualification in a particular case;
(E) to handle essential cases when there is a vacant judicial position;
(F) to handle high priority cases during vacation periods or during attendance at education programs by the sitting judge, following every effort by that judge to adjust the calendar to minimize the need for assistance and only to handle those matters which cannot be accommodated by the other judges of the court during the absence;
(G) to provide education and training opportunities to judges of one court level in the disposition of cases in another court level; and
(H) in the district court, to handle cases involving taxation, as defined in Rule 6-103(4) of the Utah Code of Judicial Administration.
Id. Rule 3-108(1).[6] In addition, reassignment is proper when a party files an affidavit of bias or prejudice under rule 63(b) of the Utah Rules of Civil Procedure. See Young v. Patterson, 922 P.2d 1280, 1281-82 (Utah 1996). Moreover, reassignment may be necessary if a judge is unable to continue hearing a case due to a disability. See Utah R. Civ. P. 63(a). This list of justifications for reassignment is by no means exhaustive. We recognize that presiding judges have broad discretion in reassigning cases.
¶ 15 Nonetheless, unless a justification for reassignment exists, a judge has a duty to retain a case until it is completed. Canon 3B(1) of the Code of Judicial Conduct states in this regard: "A judge shall hear and decide matters assigned to the judge except those in which disqualification is required or permitted by rule, or transfer to another court occurs." See also Laird v. Tatum, 409 U.S. 824, 837, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972) (Rehnquist, J., mem.) ("[A] . . . judge has a duty to sit where not disqualified which is equally strong as the duty to not sit where disqualified." (emphasis omitted)).
¶ 16 While a motion was pending before Judge Brian, the case in question was transferred in some unknown manner  without any explanation to the parties  to Judge Nehring, and subsequently was reassigned to Judge Henriod by the presiding judge. Furthermore, when the Homeowners Association moved the presiding judge to return the case to Judge Brian, she denied the motion without explaining why Judge Brian could not or should not rule on the motion to amend his judgment and/or continue to preside over the remainder of the case. Judge Lewis premised her refusal to return the case to Judge Brian upon the false assumption that the original reassignment from Judge Brian to Judge Nehring was valid. Where that original reassignment was neither documented nor apparently approved by the presiding judge, it was not a valid reassignment. Thus, Judge Lewis should have determined that Judge Brian was obligated to retain the case in order to rule on the motion pending before him and, afterward, to continue to preside over the case until or unless it was properly reassigned. We therefore remand for further appropriate action consistent with our ruling in this case.
¶ 17 Chief Justice HOWE, Justice ZIMMERMAN, and Judge WILKINS concur in Justice RUSSON's opinion.
ANDERSON, District Judge, dissenting:
¶ 18 I dissent.
¶ 19 The Homeowners Association invokes this court's jurisdiction under Utah Code Ann. § 78-2-2(3)(j) (1996), which requires an order, judgment, or decree of the district court. The "order" the Homeowners Association points to is a minute entry indicating that Judge Lewis denied the motion to reassign the case to Judge Brian. As counsel conceded at oral argument, the generation of this minute entry was the product of the Homeowners Association's effort to get an appealable order. No rule requires that *539 judges be assigned by order; rule 3-108(5) requires only a notice.
¶ 20 The majority acknowledges the absence of an order, but explains its decision as an exercise of its inherent supervisory authority over all courts of this state. This court's supervisory authority has been established for more than a decade, but this is the first time the court has used it to supervise the lower courts in the absence of an order from a lower court. In all earlier cases, there was a trial court order from which to appeal.[1] I do not question the court's authority; I question whether it has jurisdiction on the ground asserted by the Homeowners Association.
¶ 21 Rule 3-108 applies only to cases where judicial assistance is needed from another district or a senior judge. Rule 3-104 governs assignments within a district. The parties to this case acknowledged at oral argument that Judge Brian had accepted responsibility for cases in Summit County. Even though this is not reflected in the record, it is something generally known to the bar and to the members of this court. If that is the case, this may explain why another judge was assigned to this Salt Lake County case.
¶ 22 I understand the dismay of the litigants in this case when they discovered that Judge Brian, whom they needed to clarify a recent confusing ruling, had apparently been replaced. It makes sense for Judge Brian to at least clarify his ruling. I believe an approach could have been made informally[2] to the presiding judge or the trial court executive or, failing that, to higher administrative authorities in the judicial system. Ultimately, recourse to this court might have been had by petition for extraordinary relief under rule 65B of the Utah Rules of Civil Procedure on the ground of wrongful use of public authority.[3] A rule 65B proceeding would have resulted in a more expeditious remedy.
¶ 23 A rule 65B petition would also have brought the real parties in interest before this court. The presiding judge might have offered a satisfactory explanation or might have agreed that the case belongs with Judge Brian. By taking an appeal, the Homeowners Association has deprived the presiding judge of any opportunity to explain how cases are assigned in the Third District. The Homeowners Association has also managed to insure lukewarm opposition from the opposing parties, who must now pay to oppose this appeal when they actually have no objection to Judge Brian's return, as they conceded at oral argument.
¶ 24 Finally, I am concerned about how this decision will affect the trial judges of this state. It might be interpreted to say that a judge must stay with a case until the case is fully resolved or that departure from this rule must be accomplished by an order reciting the reasons for the change, which order is subject to appeal by any interested party. Such a rule would be counterproductive. While it is good policy to keep one judge with a case until it is finally over, there are many exceptions to this policy. For example, cases might be reassigned because of transfers to another division, because a judge has a family or medical emergency, because the judge needs to attend a council, board, or committee meeting, because an affidavit of bias has been filed, because the court needs to adjust caseloads, or because the assigned judge needs to hold a mandatory hearing in another case. If those reassignments must be justified by a written order explaining the reasons, and if that order is then subject to appeal, many judges may decide that the burdens and risks of agreeing to such reassignments *540 outweigh the benefit. The end result would be a judiciary that is less efficient, less flexible, and less responsive.
¶ 25 I hope trial judges will not react in this fashion. The majority acknowledges the broad discretion of presiding judges in reassigning cases. Rule 3-104(3)(E) requires adoption of local supplemental rules to guide the presiding judge in the assignment of cases to promote fair distribution of the work and prompt disposition of cases. I believe this court has taken the unusual step of ordering the return of this case to Judge Brian because this is an unusual case. If the trial courts adopt local supplemental rules, presiding judges are sensitive to the need for stability, and reasons for reassignments are given where not evident from the circumstances, I believe the trial courts will be permitted to continue to efficiently allocate judicial resources.[4]
¶ 26 I would dismiss the appeal for lack of jurisdiction and act instead on the petition for extraordinary relief. If the presiding judge concedes that Judge Brian was never properly taken from this case, I would order that it be reassigned to him.
¶ 27 Having disqualified themselves, Associate Chief Justice DURHAM and Justice STEWART do not participate herein; Court of Appeals Judge MICHAEL J. WILKINS and District Judge LYLE R. ANDERSON sat.
NOTES
[1] We recite only those facts pertinent to the issue presently on appeal. The history of this case has been discussed at great length in Hi-Country Estates Homeowners Ass'n v. Bagley & Co., 928 P.2d 1047, 1048-50 (Utah Ct.App.1996), and Hi-Country Estates Homeowners Ass'n v. Bagley & Co., 863 P.2d 1, 2-7 (Utah Ct.App.1993), rev'd, 901 P.2d 1017, 1018-20 (Utah 1995).
[2] The counterclaim for reimbursement was originally brought by Gerald H. Bagley, an original developer of the subdivision and a former owner and operator of the water system. The district court determined, however, that the Water Company was properly entitled to reimbursement because Bagley had assigned all of his rights to the Water Company in 1985.
[3] In addition to the Water Company, the other counterclaimants also asserted claims under the 1977 well lease agreement.
[4] Additionally, there is no record before the court that explains why the case was reassigned to Judge Nehring, or even whether the presiding judge authorized the purported reassignment.
[5] The parties contest whether Judge Lewis's term as presiding judge had expired before she denied the Homeowners Association's motion on August 12, 1998.
[6] A 1999 amendment to rule 3-108 adds, "Notice of assignments made under this rule shall be made in writing." Id. Rule 3-108(5).
[1] See State v. Brown, 853 P.2d 851 (Utah 1992); State v. James, 767 P.2d 549 (Utah 1989); In re Criminal Investigation, 754 P.2d 633 (Utah 1988); State v. Lafferty, 749 P.2d 1239 (Utah 1988); State v. Long, 721 P.2d 483 (Utah 1986); State ex rel. Clatterbuck, 700 P.2d 1076 (Utah 1985).
[2] The Homeowners Association would naturally have included opposing parties in all such efforts.
[3] If, as the majority apparently believes, no judge other than Judge Brian was ever properly assigned to this case, it would be an easy matter to find the action of any other judge a wrongful use of authority. It appears that the Homeowners Association finally filed a petition for extraordinary relief with this court on November 22, 1999.
[4] In addition, litigants tempted to follow the path selected by the Homeowners Association cannot fail to notice that this has caused a delay of eighteen months and that Judge Brian still may not remain on the case.